David C. Kiernan (State Bar No. 215335)
dkiernan@jonesday.com
Craig E. Stewart (State Bar No. 129530)
cestewart@jonesday.com
Lin W. Kahn (State Bar No. 261387)
lkahn@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, California 94104
Telephone: +1.415.626.3939
Facsimile: +1.415.875.5700

Catherine T. Zeng (State Bar No. 251231)
czeng@jonesday.com
JONES DAY
1755 Embarcadero Road
Palo Alto, California 94303
Telephone: +1.650.739.3939
Facsimile: +1.650.739.3900

Attorneys for Defendants
ALPHABET INC. and GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DREAM BIG MEDIA, INC., GETIFY SOLUTIONS, INC., and SPRINTER SUPPLIER LLC, Individually and on Behalf of all Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ALPHABET INC. and GOOGLE LLC,<br><br>Defendants. | **Case No. 3:22-cv-02314-JSW**<br><br>**DEFENDANTS' MOTION TO DISMISS**<br><br>Date:      September 30, 2022<br>Time:      9:00 a.m.<br>Judge:     Hon. Jeffrey S. White |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

Please take notice that on September 30, 2022, at 9:00 AM, or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Jeffrey S. White of the United States District Court for the Northern District of California, Oakland Division, located at 1301 Clay St., Oakland, California, defendants Alphabet Inc. and Google LLC (collectively "Google") will and hereby do move to dismiss the Complaint.

**RELIEF SOUGHT**

Google requests dismissal of all causes of action with prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

Dated: July 12, 2022

JONES DAY

By: */s/ David C. Kiernan*
    David C. Kiernan

Attorneys for Defendants
Alphabet Inc. and Google LLC

Mot. to Dismiss
No. 22-CV-2314-JSW

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION .................................................................................. i

RELIEF SOUGHT ................................................................................................................ i

INTRODUCTION ................................................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED .................................................................. 2

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 4

I.      LEGAL STANDARD. ............................................................................................. 4

II.     PLAINTIFFS HAVE FAILED TO STATE A TYING CLAIM. ........................... 5

        A.      Tying Requires that the Defendant Foreclosed Competition by Tying Two
                Products Together. ................................................................................. 5

        B.      Google Has Not Engaged in Any Conditioned Sale. ............................... 6

                1.      Developers are not required to purchase anything (or refrain from
                        purchasing anything) as a condition of purchasing something else. .......... 6

                2.      Plaintiffs have not alleged facts showing they were coerced into
                        making (or refraining from making) any purchase. ................................. 8

        C.      Plaintiffs Have Not Adequately Alleged Market Definitions or Market
                Power. ................................................................................................... 9

                1.      Plaintiffs fail to plead relevant product markets. ..................................... 9

                2.      Plaintiffs fail to allege market power in any relevant market. .................. 10

III.    PLAINTIFFS' OTHER ANTITRUST THEORIES ALSO FAIL. ......................... 11

        A.      Plaintiffs Have Not Stated a Bundling Claim. ........................................ 11

        B.      Plaintiffs Have Not Stated an Exclusive Dealing Claim. ........................ 12

        C.      Plaintiffs Have Not Stated a Monopoly-Leveraging Claim. ................... 13

        D.      Plaintiffs Have Not Stated a Claim Based on Google's Pricing. ............ 14

IV.     PLAINTIFFS' ALLEGATIONS REGARDING GOOGLE'S ACQUISITIONS
        ARE TIME-BARRED AND GROUNDLESS. ..................................................... 14

V.      PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER THE
        CALIFORNIA UNFAIR COMPETITION LAW. .......................................................... 17

CONCLUSION ......................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
836 F.3d 1171 (9th Cir. 2016) .......................................................................... 5, 6, 7

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
948 F.2d 536 (9th Cir. 1991) ................................................................................. 13

*AliveCor, Inc. v. Apple Inc.*,
No. 21-CV-03958-JSW, 2022 WL 833628 (N.D. Cal. Mar. 21, 2022) .......................... 10, 11

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
592 F.3d 991 (9th Cir. 2010) ................................................................................. 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................... 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................... 5

*Brantley v. NBC Universal, Inc.*,
675 F.3d 1192 (9th Cir. 2012) ................................................................................ 5

*Cascade Health Sols. v. PeaceHealth*,
515 F.3d 883 (9th Cir. 2008) ........................................................................... 11, 12

*City of San Jose v. Off. of the Com'r of Baseball*,
776 F.3d 686 (9th Cir. 2015) ................................................................................. 17

*Complete Ent. Res. LLC v. Live Nation Ent., Inc.*,
No. CV 15-9814 DSF, 2016 WL 3457177 (C.D. Cal. May 11, 2016) ...................... 15, 16

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ................................................................................... 6

*Data Gen. Corp. v. Grumman Sys. Support Corp.*,
36 F.3d 1147 (1st Cir. 1994) ................................................................................... 5

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
504 U.S. 451 (1992) ............................................................................................... 7

*Fed. Trade Comm'n v. Facebook, Inc.*,
560 F. Supp. 3d 1 (D.D.C. 2021) ............................................................................ 8

*Fed. Trade Comm'n v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020).................................................................... 5, 9, 14, 17

*Feitelson v. Google Inc.*,
    80 F. Supp. 3d 1019 (N.D. Cal. 2015) .................................................................. 12

*Hexcel Corp. v. Ineos Polymers, Inc.*,
    681 F.3d 1055 (9th Cir. 2012)............................................................................... 15

*Hicks v. PGA Tour, Inc.*,
    897 F.3d 1109 (9th Cir. 2018)................................................................................. 9

*Illinois Tool Works Inc. v. Indep. Ink, Inc.*,
    547 U.S. 28 (2006) ............................................................................................... 10

*In re Packaged Seafood Prod. Antitrust Litig.*,
    No. 15-MD-2670 JLS (MDD), 2017 WL 35571 (S.D. Cal. Jan. 3, 2017)........................... 15

*Intergraph Corp. v. Intel Corp.*,
    195 F.3d 1346 (Fed. Cir. 1999)............................................................................. 13

*Irving v. Lennar Corp.*,
    No. CIV S-12-290 KJM EFB, 2013 WL 1308712 (E.D. Cal. Apr. 1, 2013)........................... 11

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
    466 U.S. 2 (1984) ............................................................................................. 5, 6, 8

*Jensen Enters. Inc. v. Oldcastle, Inc.*,
    No. C 06-00247 SI, 2006 WL 2583681 (N.D. Cal. Sept. 7, 2006) ........................................ 13

*Lenhoff Enters., Inc. v. United Talent Agency, Inc.*,
    729 F. App'x 528 (9th Cir. 2018) ........................................................................ 17

*Mozart Co. v. Mercedes-Benz of N. Am., Inc.*,
    833 F.2d 1342 (9th Cir. 1987)................................................................................. 5

*N. Pac. Ry. Co. v. United States*,
    356 U.S. 1 (1958) ................................................................................................... 6

*Omega Env't, Inc. v. Gilbarco, Inc.*,
    127 F.3d 1157 (9th Cir. 1997)............................................................................... 12

*Paladin Assocs., Inc. v. Montana Power Co.*,
    328 F.3d 1145 (9th Cir. 2003)................................................................................. 8

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
   124 F.3d 430 (3d Cir. 1997) ................................................................................................... 9

*Reilly v. Apple Inc.*,
   No. 21-CV-04601-EMC, 2022 WL 74162 (N.D. Cal. Jan. 7, 2022) ....................................... 9

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
   471 F. Supp. 3d 981 (N.D. Cal. 2020) ........................................................................... 14, 15

*Safeway Inc. v. Abbott Labs.*,
   761 F. Supp. 2d 874 (N.D. Cal. 2011) ................................................................................. 13

*Sambreel Holdings LLC v. Facebook, Inc.*,
   906 F. Supp. 2d 1070 (S.D. Cal. 2012) .............................................................................. 6, 7

*Spindler v. Johnson & Johnson Corp.*,
   No. C 10-01414 JSW, 2011 WL 13278876 (N.D. Cal. Jan. 21, 2011) ................................... 9

*Staley v. Gilead Scis., Inc.*,
   No. 19-CV-02573-EMC, 2021 WL 4972628 (N.D. Cal. Mar. 12, 2021) .............................. 16

*Stanislaus Food Products Co. v. USS-POSCO Indus.*,
   2010 WL 3521979 (E.D. Cal. Sep. 3, 2010) ........................................................................ 16

*Streamcast Networks, Inc. v. Skype Techs., S.A.*,
   547 F. Supp. 2d 1086 (C.D. Cal. 2007) ............................................................................... 10

*Tanaka v. Univ. of S. Cal.*,
   252 F.3d 1059 (9th Cir. 2001) ............................................................................................... 9

*Unijax, Inc. v. Champion Int'l, Inc.*,
   683 F.2d 678 (2d Cir. 1982) .................................................................................................. 8

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004) ............................................................................................................ 13

*Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*,
   810 F.2d 243 (D.C. Cir. 1987) ............................................................................................ 14

**STATUTES**

California Unfair Competition Law ................................................................................... 1, 2, 4, 17

Clayton Act § 3 ............................................................................................................................. 4, 5

Sherman Act ................................................................................................................................ passim

**OTHER AUTHORITIES**

Areeda, P. & H. Hovenkamp, *Antitrust Law* ¶ 1512a (updated May 2022) ................................. 14

Areeda, P. & H. Hovenkamp, *Antitrust Law* ¶ 651 (updated May 2022) ..................................... 14

Federal Rule of Civil Procedure 12(b)(6) ........................................................................................ i

**INTRODUCTION**

Plaintiffs are three businesses that allegedly use Google mapping services, including application programming interfaces ("APIs"), to display or use maps or maps-related information on their websites or mobile applications.  In a scattershot complaint, they claim that Google uses its mapping terms of service to "force" developers to purchase API services that they did not want or that they otherwise would have purchased elsewhere.  They assert that these terms combined with Google's alleged market power in digital mapping allowed Google to charge higher prices for mapping API services and amounts to unlawful tying, bundling, exclusive dealing, and monopoly leveraging in violation of federal antitrust laws and California's Unfair Competition Law.

Plaintiffs' claims fail for multiple, independent reasons.  With respect to the tying claim, Google does not condition the sale of any Google mapping API service on plaintiffs' buying (or refraining from buying) any other product.  Plaintiffs are free to purchase (or not purchase) any Google mapping API service they wish without purchasing any other product, and they are free to purchase API services from any of the numerous other suppliers that plaintiffs admit compete with Google.  Confirming the absence of any tie, plaintiffs fail even to identify the allegedly unwanted Google products that they were forced to purchase or that they otherwise would have purchased from a competitor.  Without a conditional sale, plaintiffs' tying claim fails.

Plaintiffs have similarly not alleged a valid bundling or exclusive dealing claim.  They allege no facts showing that Google requires developers to purchase a bundle of its mapping API services together or deal exclusively with Google.  And, because their monopoly-leveraging claim depends on their tying, bundling, and exclusive dealing allegations, and cannot stand independently, the failure of those claims defeats the monopoly-leveraging claim as well.

Plaintiffs' claims also fail because plaintiffs have not alleged a valid relevant product market or that Google has market power in that market.  Plaintiffs assert only that Google's mapping API services comprise the relevant markets, without making any attempt to identify the economic substitutes for those products as the law requires.  Plaintiffs do not even identify which product is the supposed tying product and which is the tied product, even though that is a basic

requirement of any tying claim.  As for market power, plaintiffs improperly rely on Google's alleged share of an entirely different market (navigation apps used by consumers), without alleging anything about Google's share of the alleged markets (mapping API service sales to developers like plaintiffs).

Lacking any plausible anticompetitive conduct, plaintiffs are left claiming that Google's alleged price increases are unlawful.  Put simply, plaintiffs admit they want to use Google's high-quality mapping API services, but do not want to pay for them.  Courts have repeatedly rejected such claims, holding that allegations that a company's prices are too high do not state a valid antitrust claim.  Plaintiffs' complaint thus should be dismissed in its entirety.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Have plaintiffs stated a valid claim for relief under the federal antitrust laws or the California Unfair Competition Law?

2.      Have plaintiffs alleged a valid basis for tolling the statute of limitations?

## BACKGROUND

An API allows a website or app developer to use, or "call" on, the data or functionality of another software application.  Developers can use Google's mapping API services to, among other things, display a map on their website or app showing their business's location (using a "Maps" API), give turn-by-turn directions to their location (using a "Routes" API), or to display information about their business such as hours, contact information, photographs, and customer reviews (using a "Places" API).

Plaintiffs do not allege that Google is the sole provider of any of the mapping functionality found in its mapping API services or that  developers lack desirable alternatives for any of Google's mapping API services.  To the contrary, plaintiffs concede that Google's competitors offer digital mapping API services with "comparable data and quality, if not better" and "mostly at significantly reduced prices."  ECF 1, ¶¶ 10, 41, 122.  These competitors include HERE, Mapbox, TomTom, Apple Maps, Bing, ESRI, Comtech, and Telenav.  *Id.* ¶ 71.  Rather than denying the availability of fully competitive alternatives, plaintiffs' theory is that, if a developer opted to use any of Google's mapping API services, Google "forced" them to also

purchase other Google mapping API services or refrain from using mapping API services from other providers.  *Id.* ¶ 1.

As purported factual support for this theory, plaintiffs rely on section 3.2.3(e) in Google's Terms of Service:

> (e)  No Use With Non-Google Maps.  To avoid quality issues and/or brand confusion, Customer will not use the Google Maps Core Services with or near a non-Google Map in a Customer Application.  For example, Customer will not (i) display or use Places content on a non-Google map, (ii) display Street View imagery and non-Google maps on the same screen, or (iii) link a Google Map to non-Google Maps content or a non-Google map.

ECF 1, ¶ 157.  By its terms, this provision does not require that a customer purchase any Google mapping API services (or refrain from purchasing non-Google mapping API services) as a condition of using a Google mapping API service.  Customers are free to purchase and use whichever Google API service they choose, without regard to whether they purchase any other Google API services.  Similarly, customers are free to purchase and use API services from other competitors.  The only restriction is on certain uses of a Google mapping API service.

Each plaintiff alleges that it used a Google mapping API service and that Google's Terms of Service prevented it from using competitors' API services.  But plaintiffs do not identify what competitor's products they wanted to use but purportedly could not.  Nor do they allege that Google did anything to prevent them from foregoing Google's mapping API services entirely and instead using the comparable, if not better, alternatives plaintiffs assert competitors offer.

- Big Dream Media is a digital-advertising business that alleges that it used Google's Routes API service "to determine the distance between two zip codes."  ECF 1, ¶ 29. It asserts that it was "forced" to also use "other products or services" from Google. *Id.* ¶ 31.  But it does not allege what those "other products or services" were or that it would have purchased those products or services from a competitor absent Google's conduct.  It alleges that it paid $1,371.44 for the Google API service in November and December 2019, but says nothing about having incurred any other charges.  *Id.* ¶ 29.

- Getify alleges that it used unidentified Google mapping API services in a "mobile web app" called RestaurNote.  *Id.* ¶¶ 33–35.  But it does not allege that it was forced to use

1   other Google API services, that there were competitor API services that it wished to

2   use instead, or even that any other API services were needed for its application.

3   Rather than specify any of this, Getify complains that beginning in 2018, Google no

4   longer provided "sufficient free credits" and that Getify had to "either exclusively use

5   products or services provided by Google . . . or use no Google-provided products and

6   services in the RestaurNote app." *Id.* ¶ 38 (emphasis added).  Even though Getify's

7   claim turns on which of these options it chose (because the latter option would by

8   itself defeat any tying claim), Getify does not allege which option it took.  Nor does it

9   allege that it ever paid anything to Google for any API service (as opposed to using

10  "free credits").  *Id.* ¶¶ 36–37, 233.

11  •   Sprinter Supplier is an automotive parts supplier.  It alleges that it used unidentified

12      Google mapping API services "to help local customers find its business," and that it

13      was forced to use "other [Google] products and services" rather than competitors'

14      mapping API services.  *Id.* ¶¶ 40–42.  Again, however, it does not identify what

15      "other" API services it purchased from Google but would have purchased from a

16      competitor.  And, like Getify, it alleges only that its free credits "were eaten up,"

17      without alleging that it ever paid for any Google API service.  *Id.* ¶¶ 42, 234.

18  Plaintiffs' allegations regarding the relevant markets follow the same pattern.  Plaintiffs

19  allege that Google has market power in the "tying markets."  *Id.* ¶¶ 255, 270.  But plaintiffs

20  nowhere define which products comprise the tying market.  Similarly, they allege that Google has

21  foreclosed competition in the "tied markets," *id.*, but they nowhere identify which products are

22  the alleged tied products.

23  Plaintiffs assert five causes of action:  one under section 1 of the Sherman Act, two under

24  section 2 of the Sherman Act, one under section 3 of the Clayton Act, and one under the

25  California Unfair Competition Law.  All should be dismissed.

26                                    **ARGUMENT**

27  **I.     LEGAL STANDARD.**

28  A complaint must contain "more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (internal quotation marks and citations omitted).  Plaintiffs must allege enough facts "to

state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009)

(quoting *Twombly*, 550 U.S. at 570).  No weight is given to "legal conclusions" or "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements."  *Id.* at

678.

**II.     PLAINTIFFS HAVE FAILED TO STATE A TYING CLAIM.**

> **A.      Tying Requires that the Defendant Foreclosed Competition by Tying Two**
> **Products Together.**

To state a valid tying claim, a plaintiff must allege:  "(1) that [defendant] tied together the

sale of two distinct products or services; (2) that [defendant] possesses enough economic power

in the tying product market to coerce its customers into purchasing the tied product; and (3) that

the tying arrangement affects a not insubstantial volume of commerce in the tied product market."

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016) (citations

omitted).  The concern of tying law is that, by conditioning the sale of one product on the

purchase of a separate product, the arrangement might "foreclose[] competition on the merits in a

product market distinct from the market for the tying item."  *Jefferson Par. Hosp. Dist. No. 2 v.*

*Hyde*, 466 U.S. 2, 21 (1984); *see also Brantley v. NBC Universal, Inc.*, 675 F.3d 1192 (9th Cir.

2012) (rejecting tying claim where plaintiffs failed to demonstrate foreclosure in tied market).

Plaintiffs assert their tying claim under sections 1 and 2 of the Sherman Act, and also

under section 3 of the Clayton Act.  Failure to allege conditioned sales or sufficient foreclosure

dooms plaintiffs' claims under either statute.  *See Mozart Co. v. Mercedes-Benz of N. Am., Inc.*,

833 F.2d 1342, 1352 (9th Cir. 1987) ("the elements for establishing a Sherman Act § 1 claim and

a Clayton Act § 3 claim are virtually the same"); *Data Gen. Corp. v. Grumman Sys. Support*

*Corp.*, 36 F.3d 1147, 1182 n. 61 (1st Cir. 1994) (rejecting "positive and negative tying" claim

under section 2 after concluding that the claim failed under section 1).  And, failure to establish

harm to competition under Section 1 also defeats a Section 2 challenge to the same conduct.  *See,*

*e.g., Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 991 (9th Cir. 2020) ("If, in reviewing

an alleged Sherman Act violation, a court finds that the conduct in question is not anticompetitive under § 1, the court need not separately analyze the conduct under § 2."); *Sambreel Holdings LLC v. Facebook, Inc.*, 906 F. Supp. 2d 1070, 1082 (S.D. Cal. 2012) (dismissing section 2 claim that was based on alleged section 1 violations after finding that the complaint failed to state a section 1 claim).

### B.      Google Has Not Engaged in Any Conditioned Sale.

The first tying element requires "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product." *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5–6 (1958) (footnote omitted).  "[W]here the buyer is free to take either product by itself there is no tying problem." *Jefferson Par.*, 466 U.S. at 12 n.17 (quoting *N. Pac. Ry.*, 356 U.S. at 6 n.4); *Aerotec Int'l*, 836 F.3d at 1179 (rejecting tying claim where plaintiff failed to establish that defendant conditioned the sale of one product on customers also purchasing a separate service from plaintiff).  Plaintiffs have not alleged facts showing this required element.

### 1.      Developers are not required to purchase anything (or refrain from purchasing anything) as a condition of purchasing something else.

Plaintiffs rely on the Google Maps Terms of Service for their alleged tie.  ECF 1, ¶¶ 12–13, 153–57.  But those Terms merely prohibit using Google mapping API services "with or near" a non-Google map. *Id.* ¶ 157.  They do not require the purchase of any Google product as a condition of purchasing or using a separate Google product.  Customers may use, for example, any Maps API service without using a Routes API service or a Places API service.  All of the mapping API services are separately available and all of them may be purchased individually without any of the others.  Plaintiffs allege no facts showing otherwise.

Plaintiffs assert in conclusory fashion that, if a customer requests a specific Maps API service, Google will "unilaterally . . . add on" other API services and charge the customer for them. *Id.* ¶¶ 14, 164.  But plaintiffs allege no facts to support that assertion. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (court is not "required to accept as true allegations that  . . . are merely conclusory").  Plaintiffs do not claim that Google unilaterally added API

services to any of their own requests, and they do not identify any other customer to whom this supposedly happened.  Further, their assertion that Google "charged" for these phantom add-on API services is undermined by their allegations that Google charges customers on a per-call basis only when the API service is actually used in a website or applications and actually calls on Google's data or functionality.  ECF 1, ¶¶ 6–7.  Plaintiffs do not allege that Google required any developer to use the purported add-on API services in the developer's website or application. And, absent any such use, there would be no call on the API service that could have resulted in any charge.

Plaintiffs also assert that Google has engaged in tying "through its search" and "[Google Cloud Platform] . . . products."  *Id.* ¶ 266.  But they again allege no facts supporting this claim. They do not allege that Google required any developer or other user to use Google Search or the Google Cloud Platform products as a condition of purchasing any Google mapping API service.

Lacking any alleged facts to show that Google required customers to purchase unwanted Google mapping API services, plaintiffs are reduced to asserting that Google engaged in a "negative tie" by requiring that customers not purchase API services from Google's competitors. *Id.* ¶¶ 124, 151, 257.  They again rely on Google's Terms of Service.  But, again, the Terms impose no such obligation.  They provide only that customers not use Google's digital mapping content with or near a non-Google map—*e.g.*, not display Google Places content with or near a non-Google map.  *Id.* ¶ 157.  Google imposes this term for brand protection and quality assurance and a number of other reasons.  But this term does not prohibit customers from purchasing and using non-Google API services.  It restricts only how a customer uses Google's content.  It is therefore not a negative tie, which occurs "when the customer promises not to take the tied product from the defendant's competitor."  *Aerotec Int'l*, 836 F.3d at 1178 (citation, quotations, and modifications omitted); *see also Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 463 (1992) (finding a tie where "Kodak would sell parts to third parties only if they agreed not to buy service from ISO's").  When, as here, Google merely limits how its services are displayed, but does not prohibit the customer from purchasing or implementing a competitor's product, no tying or other unlawful arrangement exists.  *Sambreel Holdings*, 906 F. Supp. 2d at

1080 (Facebook policy that precluded customers from using the plaintiff's applications on their Facebook account was not an antitrust violation; the policy was "limited to an interaction between Facebook and Sambreel" and did not preclude customers from otherwise purchasing or using the plaintiff's product); *Fed. Trade Comm'n v. Facebook, Inc.*, 560 F. Supp. 3d 1, 29 (D.D.C. 2021) (granting motion to dismiss claim that Facebook violated antitrust laws by (1) prohibiting third-party apps that worked on Facebook from linking to, integrating with, or promoting a competing social network, and (2) prohibiting app developer from using Facebook API services to export Facebook user data to competing social network).

### 2.   Plaintiffs have not alleged facts showing they were coerced into making (or refraining from making) any purchase.

Plaintiffs' tying claim also fails because they do not allege facts showing that any of them was actually coerced into making or refraining from making any purchase.  As noted, plaintiffs allege in conclusory fashion that they could not "mix and combine" Google mapping API services with non-Google products and that they were "forced" to purchase "other" Google products.  ECF 1, ¶¶ 27–42.  But they do not identify what Google products they were purportedly forced to purchase or what non-Google products they wanted to purchase but could not because of the Terms of Service.  And, in the case of Getify and Sprinter Solution, they do not allege that they ever paid for any Google mapping API service.

The absence of sufficient allegations of coercion defeats their claim.  If a plaintiff was not actually coerced into purchasing the alleged tied product or foregoing a purchase from a competitor, no tie exists and the required foreclosure of competition has not occurred.  *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003) (it is "[e]ssential . . . that the seller coerced a buyer to purchase the tied product).[1]  And no forced purchase from Google can exist if the plaintiff never paid anything to Google.

---

[1] *See also Unijax, Inc. v. Champion Int'l, Inc.*, 683 F.2d 678, 685 (2d Cir. 1982) ("Actual coercion by the seller that in fact forces the buyer to purchase the tied product is an indispensable element of a tying violation."); *Jefferson Par.*, 466 U.S. at 16 ("when a purchaser is 'forced' to buy a product he would not have otherwise bought even from another seller in the tied product market, there can be no adverse impact on competition because no portion of the market which would otherwise have been available to other sellers has been foreclosed").

**C.**     **Plaintiffs Have Not Adequately Alleged Market Definitions or Market Power.**

**1.**     **Plaintiffs fail to plead relevant product markets.**

"Where a complaint fails to adequately allege a relevant market underlying its antitrust claims, those claims must be dismissed." *Reilly v. Apple Inc.*, No. 21-CV-04601-EMC, 2022 WL 74162, at *4 (N.D. Cal. Jan. 7, 2022); *Qualcomm*, 969 F.3d at 992 ("threshold step in any antitrust case is to accurately define the relevant market"). Defining the relevant market is particularly important in tying cases because a tying claim is based on the theory that a seller with market power in the tying market uses that power to exclude sellers in a separate tied market. *Spindler v. Johnson & Johnson Corp.*, No. C 10-01414 JSW, 2011 WL 13278876, at *3 (N.D. Cal. Jan. 21, 2011). A court or jury cannot evaluate these elements without proper market definitions. Courts accordingly frequently dismiss tying claims for failure to plead plausible relevant markets. *E.g., id.*, at *3; *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001).

Plaintiffs assert that "Maps APIs," "Routes APIs," and "Places APIs" services are each a "relevant product market." ECF 1, ¶¶ 74–76. But those are simply labels that Google has applied to Google's grouping of its various separate API services. *Id.*; *cf.* https://mapsplatform.google.com/pricing/. These Google labels do not describe a relevant product market because (1) they refer only to broad categories of services, not the separate individual products Google offers, and (2) they offer no basis for identifying the economic substitutes for those various mapping API services. *See Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018) (a relevant market "must encompass the product at issue as well as all economic substitutes for the product," or products that are reasonably interchangeable). The complaint makes no attempt to allege facts showing that no alternative products exist or to show that potential alternatives are not in fact viable substitutes. This is fatal. "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products . . . the relevant market is legally insufficient and a motion to dismiss may be granted." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997); *see also Reilly*, 2022 WL 74162, at *6 ("[A] plausible market

requires alleged facts explaining why the products included in the market *are substitutes* for one another as well as alleged facts explaining why seemingly similar products excluded from the market *are not substitutes* for those in the market."); *Streamcast Networks, Inc. v. Skype Techs., S.A.*, 547 F. Supp. 2d 1086, 1095 (C.D. Cal. 2007) (rejecting plaintiff's market definition for failure to plead why alternative products that "permit[ted] users to accomplish the same basic task" should be excluded); *AliveCor, Inc. v. Apple Inc.*, No. 21-CV-03958-JSW, 2022 WL 833628, at *7 (N.D. Cal. Mar. 21, 2022) (dismissing complaint because plaintiff's proposed "ECG-capable wearable device market lacks justification" given lack of allegations "why seemingly similar products, such as ECG-capable portable or mobile devices, are not reasonable substitutes").[2]

Nor can plaintiffs' market definition be read as properly alleging a single-brand market of only Google's mapping API services (*i.e.*, a market in which only Google competes). The complaint affirmatively contradicts any such contention. It expressly alleges that numerous competitors offer mapping API services with "comparable data and quality" to Google's products and it names eight of them. *E.g.*, ECF 1, ¶¶ 71, 122.

Plaintiffs' market definition allegations are also inadequate because plaintiffs do not identify which product is the tying product and which is the tied product. Plaintiffs allege only that Google "tied the distribution of Maps APIs, Routes APIs, and Places APIs" without specifying which product was used to coerce the purchase of which other product. *Id.* ¶ 254. Without knowing which API services are part of the alleged tying markets (in which Google allegedly possesses market power) and which are part of the alleged tied markets (in which Google is allegedly foreclosing competition), it is impossible to evaluate the plausibility of plaintiffs' tying allegations.

### 2. Plaintiffs fail to allege market power in any relevant market.

Even if plaintiffs' relevant product market allegations were valid, plaintiffs do not allege facts showing that Google has market power. *Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547

---

[2] Plaintiffs also allege that "additional relevant markets salient for this case" "include the market for internet search and the market for cloud computing" (ECF 1, ¶ 77) but provide no further allegations to define these markets. These allegations fall woefully short of pleading standards.

U.S. 28, 46 (2006) ("in all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product").  Plaintiffs cite a U.S. House Report as saying that Google has 80%+ market share.  ECF 1, ¶ 122.  But that Report refers only to Google's share of the "navigation app market," not any purported markets for the Maps, Routes, or Places API services.[3]  And the complaint makes clear that navigation apps are not the same as mapping API services.  The complaint explains that there are "two sets of customers for digital-mapping services:  [1] app or website developers . . . who use underlying mapping libraries and design tools to produce customized maps; and [2] consumers . . . who use map products for navigation."  *Id.* ¶ 64.  The former purchase API services; the latter do not.  Without more, alleging that Google has 80% of the latter market says nothing about Google's market power in the former.  *See Irving v. Lennar Corp.*, No. CIV S-12-290 KJM EFB, 2013 WL 1308712, at *17 (E.D. Cal. Apr. 1, 2013) (finding allegation of defendant's market power nationally to be insufficient because "[i]f [plaintiffs] are relying on Yuba County or some other area as the relevant market, they have not specifically described it nor identified defendants' power *in that market*" (emphasis added)).  Similarly, the single allegation that "Google Maps API captures over 90% of the business-to-business market" (ECF 1, ¶ 130) raises yet another undefined market that does not match the purported relevant markets.  Plaintiffs' other allegations regarding Google's market share are even further removed from the three API services at issue.  *See id.* ¶¶ 123, 130.

## III.   PLAINTIFFS' OTHER ANTITRUST THEORIES ALSO FAIL.

### A.   Plaintiffs Have Not Stated a Bundling Claim.

Plaintiffs also do not allege any facts supporting their bundling allegation.  ECF 1, ¶¶ 151, 165, 266.  "Bundling is the practice of offering, for a single price, two or more goods or services that could be sold separately."  *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 894 (9th Cir. 2008).  Plaintiffs do not allege Google offers two or more products for a single price.  To the

---

[3] See Google's Request for Judicial Notice ("RJN") Ex. A (https://judiciary.house.gov/uploadedfiles/competition_in_digital_markets.pdf?utm_campaign=4493-519)(emphasis added), p. 15.  Because a document referred to in a complaint can be "incorporated by reference if [the plaintiff] used the [document] to form the basis of its claims," *AliveCor*, 2022 WL 833628, at *3, the Court can properly consider the Report on this motion.

contrary, plaintiffs affirmatively allege that Google charges separate prices for each of its API services. ECF 1, ¶ 7. They also do not allege that any of Google's prices are below-cost, which is also required to challenge a bundled discount. *Cascade Health*, 515 F.3d at 909.

### B. Plaintiffs Have Not Stated an Exclusive Dealing Claim.

Plaintiffs' claim that Google has engaged in "unlawful exclusive dealing" (ECF 1, ¶¶ 258, 289–91) fails because Google does not require that developers exclusively use Google products. "Exclusive dealing involves an agreement between a vendor and a buyer that prevents the buyer from purchasing a given good from any other vendor." *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 996 (9th Cir. 2010). Here, customers are free to purchase and use non-Google products in addition to whatever Google mapping API services they purchase. *Supra*, pp. 6–9. Accordingly, plaintiffs' exclusive-dealing claim fails from the start.[4]

But even if Google required exclusive use of its products or services, plaintiffs' claim would still fail. Plaintiffs are required to first allege facts that the exclusive dealing "foreclose[s] competition in a substantial share of the line of commerce affected," *Allied Orthopedic*, 592 F.3d at 996, defined as, at a minimum, 40% to 50% of the relevant market. *See Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1029–30 & n.8 (N.D. Cal. 2015) (citing *United States v. Microsoft Corp.*, 253 F.3d 34, 70 (D.C. Cir. 2001) ("roughly 40% [to] 50% share [of the relevant market] usually [is] required in order to establish a § 1 [exclusive-dealing] violation")); *Omega Env't, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162–64 (9th Cir. 1997) (holding a 38% foreclosure, in light of other factors, insufficient to support a jury verdict). If that threshold is met, courts then consider the length of the agreement, the customer's ability to terminate the agreement, and whether alternative channels to competitors still exist. *See Feitelson*, 80 F. Supp. 3d at 1030.

Plaintiffs do not allege any facts showing foreclosure of competition. Indeed, plaintiffs do not allege a properly defined relevant market or Google's share of that market; nor do they attempt to identify what percentage of Google's customers would opt to use a competitor's APIs

---

[4] Plaintiffs refer to an alleged contract with Ford. ECF 1, ¶ 217. But they do not allege any facts showing that this contract is for the kind of mapping API service at issue in this case. Nor do they allege any facts showing the state of competition in the market for the unidentified products Ford purchased or that the contract has foreclosed competition in that market.

1  absent the purported exclusivity or any of the other factors.  Plaintiffs' failure to allege any of

2  these critical facts defeats their claim.

3        **C.      Plaintiffs Have Not Stated a Monopoly-Leveraging Claim.**

4        The Ninth Circuit has rejected monopoly leveraging as an independent theory of liability,

5  requiring instead proof of all the elements of either actual or attempted monopolization, including

6  exclusionary conduct.  *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 547 (9th Cir.

7  1991); *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 415 n.4

8  (2004) (a claim for monopoly leveraging "presupposes anticompetitive conduct").[5]  Plaintiffs'

9  monopoly-leveraging claim fails because none of the conduct plaintiffs allege is exclusionary.

10  Plaintiffs rely primarily on their tying, exclusive dealing, and bundling allegations.  ECF 1,

11  ¶¶ 154, 165–71.  Because those claims fail for the reasons discussed above, the leveraging claim

12  also fails.  *See Trinko*, 540 U.S. at 415 n.4 (rejecting leveraging claim given rejection of refusal-

13  to-deal claim on which it was based).  To the extent plaintiffs rely on Google's acquisitions, that

14  claim fails as well.  *See infra*, pp. 15–17.

15        Plaintiffs' other monopoly-leveraging allegations similarly do not identify any

16  exclusionary conduct.  Plaintiffs allege that Google's mapping API services benefit from Google

17  Search, which plaintiffs assert gives Google a "data advantage[]."  *Id.* ¶¶ 151–52, 166–67, 170,

18  283.  But plaintiffs do not allege any facts showing that it is unlawful for Google to benefit from

19  its search engine or data.  Conduct is not exclusionary merely because a company benefits in one

20  market from having a desirable product in another market.  Such a benefit "does not mean . . . that

21  [the] conduct is anticompetitive," because it may reflect the lawful benefits of the company's

22  investment in creating a valuable product.  *Alaska Airlines*, 948 F.2d at 548; *Intergraph Corp. v.*

23  *Intel Corp.*, 195 F.3d 1346, 1353 (Fed. Cir. 1999) ("The antitrust law has consistently recognized

24  that a producer's advantageous or dominant market position based on superiority of a commercial

25  _____

26  [5] *See also Jensen Enters. Inc. v. Oldcastle, Inc.*, No. C 06-00247 SI, 2006 WL 2583681, at *6

27  (N.D. Cal. Sept. 7, 2006) (holding that monopoly leveraging can only be pled as part of a
   monopolization or attempted monopolization claim); *Safeway Inc. v. Abbott Labs.*, 761 F. Supp.

28  2d 874, 895 (N.D. Cal. 2011) ("Monopoly leveraging, on its own, is not proscribed under Section
   2.").

1    product and ensuing market demand is not the illegal use of monopoly power prohibited by the

2    Sherman Act.").

3          Similarly, plaintiffs' allegation that Google engages in "self-preferencing" (ECF 1,

4    ¶¶ 151, 172–80) does not state an antitrust claim.  Plaintiffs assert that Google permits map

5    caching for Google's "own products" (such as "local search" or "hotel finder") but not in third-

6    party websites or apps that use Google's digital mapping API services.  ECF 1, ¶¶ 175–79.  But

7    that allegation means, at most, that Google has limited the functionality of the products it sells to

8    developers, which would enhance opportunities for competing API service providers to market

9    their own products, not foreclose them from doing so.  Google's caching policy thus does not

10   exclude rivals and is not an antitrust violation.  *See* P. Areeda & H. Hovenkamp, *Antitrust Law*

11   ¶ 651 (updated May 2022) (developing a less desirable product does not "exclude rivals from the

12   market" and is not monopolistic).

13         Finally, plaintiffs' monopoly-leveraging claim (and their section 2 claim generally) fails

14   because of their failure (as shown above) to allege a properly defined relevant market and

15   Google's share of that market.  To state a valid section 2 claim, plaintiffs must allege both.

16   *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 1000 (N.D. Cal. 2020).

17         **D.     Plaintiffs Have Not Stated a Claim Based on Google's Pricing.**

18         Lacking any other valid claim, plaintiffs are left complaining about Google's pricing,

19   alleging that Google engaged in "anticompetitive price hikes."  ECF 1, ¶¶ 18, 204.  That

20   allegation also fails to state a claim.  "[A]n excessive price alone does not establish a violation of

21   the antitrust laws, because imposition of a high price is not, in and of itself, an anticompetitive

22   act."  *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 252 (D.C. Cir.

23   1987); *Qualcomm*, 969 F.3d at 1003 ("profit-seeking behavior alone is insufficient to establish

24   antitrust liability"); P. Areeda & H. Hovenkamp, *Antitrust Law* ¶ 1512a (updated May 2022)

25   ("Antitrust makes unilateral pricing per se lawful[.]").

26   **IV.    PLAINTIFFS' ALLEGATIONS REGARDING GOOGLE'S ACQUISITIONS ARE**

27         **TIME-BARRED AND GROUNDLESS.**

28         Plaintiffs allege that "Google has engaged in a series of actions to acquire and/or maintain

1   monopoly power," including "anticompetitive acquisitions, especially of Waze, at different levels

2   of the digital-mapping stack."  ECF 1, ¶ 151.  To the extent that plaintiffs intend to rely on this

3   allegation as a basis for any of their causes of action, that claim is time-barred.  The acquisitions

4   occurred between 2004 and 2016 (Waze in 2013), all well before the four-year statute of

5   limitations period.  *Id.* ¶¶ 78–79, 90.  Courts have routinely held that a claim challenging a pre-

6   limitations acquisition as anticompetitive is barred by the four-year statute of limitations.  *Reveal*

7   *Chat*, 471 F. Supp. 3d at 994; *Complete Ent. Res. LLC v. Live Nation Ent., Inc.*, No. CV 15-9814

8   DSF (AGRX), 2016 WL 3457177, at *1 (C.D. Cal. May 11, 2016) (rejecting argument that pre-

9   limitations merger could be challenged as one component of a purported scheme to monopolize).

10      Plaintiffs' tolling allegations do not save this claim.  Plaintiffs first allege lack of

11   discovery (ECF 1, ¶¶ 240–244, 248) but lack of discovery does not toll the statute of limitations.

12   The Ninth Circuit "do[es] not require a plaintiff to actually discover its antitrust claims before the

13   statute of limitations begins to run."  *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060

14   (9th Cir. 2012); *see also In re Packaged Seafood Prod. Antitrust Litig.*, No. 15-MD-2670 JLS

15   (MDD), 2017 WL 35571, at *14 (S.D. Cal. Jan. 3, 2017) (discussing Supreme Court and Ninth

16   Circuit cases establishing "that it is inappropriate to apply the discovery rule to Sherman Act

17   claims").

18      Plaintiffs also fail to adequately plead fraudulent concealment.  ECF 1, ¶¶ 247–51.  That

19   doctrine requires a plaintiff to allege with particularity that: "(1) the defendant took affirmative

20   acts to mislead the plaintiff; (2) the plaintiff did not have 'actual or constructive knowledge of the

21   facts giving rise to its claim'; and (3) the plaintiff acted diligently in trying to uncover the facts

22   giving rise to its claim."  *Reveal Chat*, 471 F. Supp. 3d at 992.  Plaintiffs have not alleged any of

23   this.

24      Plaintiffs do not identify any affirmative acts that misled them.  They allege that Google

25   concealed its conduct "by failing to disclose their wrongful tying and acquisition and maintenance

26   of a monopoly."  ECF 1, ¶ 249.  But non-disclosure is insufficient "unless the defendant had a

27   fiduciary duty to disclose information to the plaintiff."  *Reveal Chat*, 471 F. Supp. 3d at 992.

28   Plaintiffs do not allege that Google had any such duty.  Plaintiffs' suggestion that Google's

1   alleged antitrust violations were "self-concealing" (ECF 1, ¶ 250) is irrelevant because "the Ninth

2   Circuit has expressly rejected the argument that a defendant's acts constitute fraudu-lent

3   concealment because they are 'by nature self-concealing.'" *Staley v. Gilead Scis., Inc.*, No. 19-

4   CV-02573-EMC, 2021 WL 4972628, at *17 (N.D. Cal. Mar. 12, 2021).  And even if self-

5   concealment were a viable theory, plaintiffs have not adequately alleged "that deception or

6   concealment is a necessary element of the anticompetitive conduct" complained of.  *Id.*

7       Plaintiffs' complaint also fails to plausibly allege lack of knowledge and diligence.  *See*

8   ECF 1, ¶¶ 241, 243–244.  Plaintiffs allege no facts to support their purported unawareness of

9   Google's acquisitions (which were publicly reported).  *See, e.g.*, Google's RJN Exs. C–F

10  (contemporaneous articles discussing 2013 acquisition).  Nor do they allege any facts showing

11  what they did to be informed of Google's acquisitions.  Their allegations should accordingly be

12  disregarded.

13      The continuing-violation doctrine also does not save plaintiffs' claims.  The acquisitions

14  "occurred but one, single time," and the alleged harm—elimination of a competitor and accrual of

15  market power (*e.g.*, ECF 1, ¶¶ 19, 90, 104–05)—would all have resulted from the consummation

16  of the acquisitions, not from any overt, continuing act by Google post-acquisition.  *See Stanislaus*

17  *Food Products Co. v. USS-POSCO Indus.*, 2010 WL 3521979, at *15–17 (E.D. Cal. Sep. 3, 2010)

18  (rejecting the continuing violation doctrine and dismissing claims challenging a joint venture that

19  occurred outside the limitations period); *Complete Ent.*, 2016 WL 3457177, at *1 (rejecting

20  argument that, "if a merger leads to monopoly power then anything anticompetitive that the

21  newfound monopolist does is a 'continuing violation' that began with the merger, allowing the

22  merger to be challenged indefinitely").[6]

23      In addition to being time-barred, plaintiffs' allegations about the acquisitions do not state

---

24  [6]  To the extent plaintiffs rely on their tolling allegations to extend the statute of limitations as to
25  any of their allegations beyond Google's acquisitions, that attempt fails for the same reasons.
     Lack of discovery is not a basis for tolling, and plaintiffs do not allege facts sufficient to show
26  fraudulent concealment or a continuing violation.  The allegedly anticompetitive provision is in
     Google's Terms of Service, which are and have been publicly available on Google's website.  *See*
27  Google's RJN Ex. B.  And plaintiffs' other allegations indicate that they read and agreed to the
     Terms of Service.  *See, e.g.*, ECF 1, ¶ 238 (alleging that California law applies to "every Class
28  member" because of provision in the "Terms of Service").

1  a valid antitrust claim.  Plaintiffs are purchasers of mapping API services and allege the sale of

2  mapping API services as the relevant market, but they allege no facts showing that Waze or any

3  of the acquired companies participated in any such market (as opposed to the market for point-to-

4  point navigation apps sold to consumers).  *Qualcomm*, 969 F.3d at 992 ("in assessing alleged

5  antitrust injuries, courts must focus on anticompetitive effects 'in the market where competition is

6  [allegedly] being restrained'").

7  **V.     PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER THE CALIFORNIA**

8  **        UNFAIR COMPETITION LAW.**

9        Because plaintiffs' California Unfair Competition Law claim is based on the same

10  conduct and theory of anticompetitive harm as their antitrust claims, the inadequacy of the

11  antitrust allegations also defeats those state-law claims.  *City of San Jose v. Off. of the Com'r of

12  Baseball*, 776 F.3d 686, 691–92 (9th Cir. 2015) ("[U]nder California law '[i]f the same conduct is

13  alleged to be both an antitrust violation and an "unfair" business act or practice for the same

14  reason—because it unreasonably restrains competition and harms consumers—the determination

15  that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is

16  not "unfair" toward consumers.'" (quoting *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375

17  (2001)); *see also Lenhoff Enters., Inc. v. United Talent Agency, Inc.*, 729 F. App'x 528, at *2 (9th

18  Cir. 2018) (same).

19                                  **CONCLUSION**

20        The complaint should be dismissed with prejudice.

21  Dated: July 12, 2022                    JONES DAY

22

23                                  By: */s/ David C. Kiernan*
                                        David C. Kiernan

24
                                    Attorneys for Defendants
25                                  Alphabet Inc. and Google LLC

26

27

28