Justin S. Nematzadeh
**NEMATZADEH PLLC**
101 Avenue of the Americas, Suite 909
New York, New York 10013
Telephone:    (646) 799-6729
jsn@nematlawyers.com
*Attorney for Plaintiffs and the Class*
*Admitted via pro hac vice*

John G. Balestriere*
Matthew W. Schmidt (State Bar No. 302776)**
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:    (212) 374-5401
Facsimile:    (212) 208-2613
john.balestriere@balestrierefariello.com
matthew.schmidt@balestrierefariello.com
*Attorneys for Plaintiffs and the Class*
*Pro hac vice application forthcoming*
** Admission application forthcoming*

Mario Simonyan (State Bar No. 320226)
**ESQGo, PC**
303 North Glenoaks Boulevard, Suite 200
Burbank, California 91502
Telephone: (424) 363-6233
mario@esqgo.com
*Attorney for Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DREAM BIG MEDIA, INC., GETIFY SOLUTIONS, INC., and SPRINTER SUPPLIER LLC, Individually and on Behalf of all Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALPHABET INC. and GOOGLE LLC,<br><br>Defendants. | Case No.: 22-cv-02314-JWS<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS<br><br>Date:    September 30, 2022<br>Time:    9:00 a.m.<br>Judge:   Hon. Jeffrey S. White<br><br>ORAL ARGUMENT REQUESTED |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .............................................................................................................ii

I.    INTRODUCTION ........................................................................................................... 1

II.   STATEMENT OF ISSUES ............................................................................................. 3

III.  STATEMENT OF FACTS.............................................................................................. 3

    A. DEFENDANTS' ANTITRUST DAMAGE TO PLAINTIFFS AND OTHER CLASS
    MEMBERS INCLUDE PRICE INCREASES AND CREDIT DEPLETION........................ 4

    B. DEFENDANTS' ANTITRUST DAMAGE TO PLAINTIFFS AND OTHER CLASS
    MEMBERS INCLUDE OTHER ANTICOMPETITIVE HARM ........................................ 5

    C. DEFENDANTS IGNORE PLAINTIFFS' WELL-PLED, DETAILED FACTUAL
    ALLEGATIONS ............................................................................................................... 7

IV.   LEGAL STANDARD ...................................................................................................... 8

V.    ARGUMENT.................................................................................................................... 9

    A. DEFENDANTS' MOTION TO STRIKE CLASS IS PREMATURE AND SHOULD BE
    DENIED............................................................................................................................ 9

    B. PLAINTIFFS' PROPOSED CLASS, WHO SUFFERED ANTITRUST INJURY, ONLY
    INCLUDES THOSE WITH ARTICLE III STANDING ...................................................... 11

    C. PLAINTIFFS HAVE PROPERLY PROPOSED A CLASS THAT INCLUDES USERS
    INJURED BY GOOGLE'S ANTICOMPETITIVE PRACTICES, WHICH IS NOT A "FAIL-
    SAFE" CLASS ................................................................................................................. 13

VI.   CONCLUSION................................................................................................................ 14

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>CASES</u>

3

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.,*
  301 F.R.D. 487 (C.D. Cal. 2014)............................................................9

4

*Brazil v. Dell Inc*
  2008 WL 2693629 (N.D. Cal. July 7, 2008). .......................................10

5

6

*Brown v. Google,*
  2021 WL 6064009 (N.D. Cal. Dec. 22, 2021). ....................................12

7

*Bruton v. Gerber Prods. Co.,*
  2018 WL 4181903 (N.D. Cal. Aug. 31, 2018)......................................10

8

9

*Calhoun v. Google LLC,*
  526 F. Supp. 3d 605 (N.D. Cal. 2021)..................................................12

10

*Capella Photonics, Inc. v. Cisco Sys., Inc.,*
  77 F. Supp. 3d 850 (N.D. Cal. 2014)......................................................9

11

12

*Charlebois v. Angels Baseball, LP,*
  2011 WL 2610122 (C.D. Cal. June 30, 2011).......................................14

13

*In re Anthem, Inc. Data Breach Litig.,*
  2016 WL 3029783 (N.D. Cal. May 17, 2016) ......................................13

14

*In re Wal-Mart Stores, Inc. Wage and Hour Litig.,*
  505 F. Supp. 2d 609 (N.D. Cal. 2007)....................................................9

15

16

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*
  2017 WL 3727318 (N.D. Cal. Aug. 30, 2017)......................................12

17

*Kamar v. RadioShack Corp.,*
  375 Fed. App'x. 734 (9th Cir. 2010) ....................................................13

18

19

*Klein v. Facebook, Inc.,*
  2022 WL 141561 (N.D. Cal. Jan. 14, 2022) ........................................11

20

*Lyons v. Bank of Am., NA*
  2011 WL 6303390 (N.D. Cal. Dec. 16, 2011) .....................................12

21

22

*Melgar v. CSK Auto, Inc.,*
  681 F. App'x 605 (9th Cir. 2017)..........................................................14

23

*Moeller v. Taco Bell Corp.,*
  2012 WL 3070863 (N.D. Cal. July 26, 2012).......................................14

24

25

*Morgan v. FedEx Corp.,*
  2009 WL 10736798 (N.D. Cal. Dec. 17, 2009). ..................................10

26

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,*
  31 F.4th 651 (9th Cir. 2022)..................................................................10

27

28

*Perkins v. LinkedIn Corp.*,
 53 F. Supp. 3d 1190 (N.D. Cal. 2014) ................................................................9

*Reiter v. Sonotone Corp.*,
 442 U.S. 330 (1979) ..........................................................................................11

*Sanchez v. L.A. Dept. of Transp.*,
 39 F.4th 548 (9th Cir. 2022) ............................................................................11

*Sanders v. Apple Inc.*,
 672 F. Supp. 2d 978 (N.D. Cal. 2009) ..............................................................12

*Thorpe v. Abbott Labs., Inc.*,
 534 F. Supp. 2d 1120 (N.D. Cal. 2008) ..............................................................9

*Velasquez v. HSBC Fin. Corp.*,
 2009 WL 112919 (N.D. Cal. Jan. 16, 2009) ......................................................9

*Yastrab v. Apple Inc.*,
 2015 WL 1307163 (N.D. Cal. Mar. 23, 2015) ................................................8, 9

**<u>RULES</u>**

Fed. R. Civ. P. 23(d)(1)(D) ......................................................................................8

1

## I.     INTRODUCTION

2     The Court should deny Defendants' improper attempt to circumvent Federal Rule of Civil

3  Procedure ("Rule") 23 with its baseless Motion to Strike Class Action Allegations (ECF No. 29

4  ("Motion to Strike Class")).[1] Plaintiffs and other Class members have been directly harmed by

5  Defendants' anticompetitive practices, including, without limitation, tying (negative and positive),

6  bundling, exclusive dealing, self-preferencing, monopolization, and attempted monopolization, in

7  connection with products through Google Maps' digital-mapping application programming

8  interfaces ("APIs"), including Maps APIs, Routes APIs, and Places APIs, and other products and

9  services. In essence, Defendants force Plaintiffs and other Class members who use any type of

10 Google Maps digital mapping APIs in one of the relevant products markets, which are Maps APIs,

11 Routes APIs, and Places APIs, to only use Google Maps APIs in all of the separate, relevant product

12 markets, especially to the exclusion of using any competitors' digital mapping APIs in the relevant

13 product markets.

14     The main tying product is Google Maps' Maps APIs, and the tied products are Google

15 Maps' Routes APIs and Google Maps' Places APIs; once Plaintiffs and other Class members use

16 Google Maps' Maps APIs to form the base of a digital map, Defendants' terms of service ("TOS")

17 and their pattern and pervasive practice prohibit users from using any Routes APIs or Places APIs

18 from competitors to embed onto or use in conjunction with their digital map, despite the preference

19 of Plaintiffs and other Class members to use competitors' Routes APIs or Places APIs which are

20 significantly cheaper (some even for free) and of comparable, if not better, quality. And if Plaintiffs

21 and other Class members want to use Google Maps' Routes APIs or Places APIs without using

22 Google Maps' Maps APIs, they cannot; they must use Google Maps' Maps APIs. The proposed

23 Class remains specific and ascertainable, and the Court should deny Defendants' Motion to Strike

24 Class.

25     First, the Court should deny the Motion to Strike Class because it is premature where

26 Plaintiffs and Defendants have neither commenced discovery nor have Plaintiffs sought class

27 certification. As this Court has noted on several occasions, arguments to strike class allegations,

28

---

[1] All ¶_ references herein are to the Complaint, and any terms not defined herein have the meanings defined in the Complaint.

1  similar to the arguments that Defendants present in the Motion to Strike Class, are more properly

2  conducted after discovery, as the form of class evolves only through the process of reviewing

3  evidence related to Plaintiffs' claims and Defendants' defenses. The Court should deny the Motion

4  to Strike Class as premature and allow the case to proceed to discovery and a motion for class

5  certification.

6      Second, the Court should deny the Motion to Strike Class because the Class only includes

7  those with standing under Article III of the United States Constitution ("Article III") and antitrust

8  standing. Plaintiffs have specified that the proposed Class includes only ***direct victims***; indeed,

9  Plaintiffs were precise enough to specifically allege that indirect users are not in the proposed Class.

10  As defined, Plaintiffs' proposed Class includes developers and other direct users who have

11  *purchased* Google Maps' Maps APIs, Routes APIs, or Places APIs, creating a cognizable antitrust

12  injury. And even those who have had their free credits depleted more rapidly because of Google's

13  anticompetitive practices have a cognizable injury, as those are assets and provide rights owned

14  and then lost by Plaintiffs and other Class members--if they were not assets and provided no rights,

15  there would have been no reason for Google Maps to have offered them, which also creates a

16  cognizable antitrust injury. And Defendants do not even address the fact that Plaintiffs seek

17  injunctive and declaratory relief for the Class.

18      Third, Plaintiffs have properly proposed a Class that includes direct users injured by

19  Defendants' anticompetitive practices, which is not a "fail-safe" class. Instead, Plaintiffs have

20  defined the Class that only seeks to include developers or other direct users who have purchased or

21  used the Maps APIs, Routes APIs, and Places APIs—these are readily ascertainable members of

22  the proposed Class. Moreover, the Ninth Circuit even disapproves of the premise that a class can

23  be "fail-safe," and this Court has also certified classes with "fail-safe" definitions. Plaintiffs have

24  properly proposed a Class that includes direct users injured by Defendants' anticompetitive

25  practices.

26      It is extremely telling that nowhere in the Motion to Strike Class nor the Motion to Dismiss

27  do Defendants argue that (i) Plaintiffs do not have Article III standing nor suffered antitrust injury,

28  (ii) there was an insubstantial foreclosure of competition, (iii) an insubstantial volume of commerce

was affected, (iv) any purported procompetitive justifications that outweigh alleged anticompetitive harms, nor (v) the alleged unlawful activity did not cause antitrust harm. And, without mention, Defendants side-step the injunctive and declarative angle of the Class relief sought. Nor are they permitted to raise those arguments, at this point, in reply briefing. *Dytch v. Yoon*, 2011 WL 839421, at *3 (9th Cir. Mar. 7, 2011) (parties cannot raise new issue for the first time in their reply); *Cytokinetics, Inc v. Pharm-Olam Intl., Ltd.*, 2015 WL 1056324, *4 (N.D. Cal. Mar. 10, 2015). Should they take issue with the precise definition or working of the proposed Class, those disputes must be addressed during the class-certification briefing—and at the very least —after the benefit of discovery.

## II.   STATEMENT OF ISSUES

1.  Should Plaintiffs' class action allegations be stricken?

## III.   STATEMENT OF FACTS

Together, Plaintiffs and the Class have paid for Google Maps' Maps APIs, Routes APIs, and Places APIs at inflated prices or had their free-credit tiers consumed more rapidly because of the inflated prices resulting from the Defendants' anticompetitive activity. ¶¶2, 28-31, 33-38, 40-42, 46, 48, 74-76, 122, 232-34. Direct victims of the alleged anticompetitive schemes are the Class members identified herein: those who have directly purchased Maps APIs, Routes APIs, or Places APIs, or those who have directly had their free credits—provided by Google Maps—consumed more rapidly. ¶11. Plaintiffs were even precise to "specifically exclude [from the Class] indirect purchasers, app or website developers, or other types of users who have purchased Maps APIs, Routes APIs, or Places APIs from a more-direct purchaser to Defendants that did *not* pass on all of the purchase price or free-tier credits to the app or website developers or other types of users." ¶48

During the Class Period, Plaintiffs used Google Maps' Maps APIs and through the anticompetitive negative and positive tying, bundling, and exclusive dealing, they were forced to use Google Maps' other digital-mapping APIs and could not use other providers' digital-mapping APIs—e.g., Routes APIs and Places APIs. *Id.* The main tying product is Google Maps' Maps APIs, and the tied products are Google Maps' Routes APIs and Google Maps' Places APIs; once Plaintiffs and other Class members use Google Maps' Maps APIs to form the base of a digital map,

Defendants' TOS and their pattern and pervasive practice prohibit users from using any competitors' Routes APIs or Places APIs to embed onto or use in conjunction with the digital map, despite the preference of Plaintiffs and other Class members to use competitors' Routes APIs or Places APIs that are significantly cheaper (some even for free) and of comparable, if not better, quality. ¶¶12, 153-63. And if Plaintiffs and the Class want to use Google Maps' Routes APIs or Places APIs without using Google Maps' Maps APIs, they cannot; they must use Google Maps' Maps APIs. *Id*. These costs often skyrocket for Plaintiffs and other Class members and are often beyond their control because Google Maps does not permit caching, and there is a charge each time a digital map is accessed, reloads, refreshes, and used. ¶8.

   A. **Defendants' Antitrust Damage to Plaintiffs and Other Class Members Include Price Increases and Credit Depletion.**

   The substantial foreclosure of competition resulting from the tying (negative and positive), bundling, exclusive dealing, self-preferencing, monopolization, and attempted monopolization has affected a substantial volume of commerce. ¶¶120-21, 128, 197-98, 223-24, 255, 270-71. The anticompetitive practices have resulted in concrete damages to Plaintiffs and other Class members, in part through staggering price hikes and more-rapid consumption of free-tier credits for Google Maps' Maps APIs, Routes APIs, and Places APIs. ¶¶18, 122. According to a recent report by the U.S. House Committee on the Judiciary, Subcommittee on Antitrust, Commercial and Administrative Law ("House Antitrust Subcommittee") that was released on October 6, 2020, entitled "Investigation of Competition in Digital Markets-Majority Staff Report and Recommendations" ("House Antitrust Proposals"), developers have told the House Antitrust Subcommittee that ever since Google Maps enforced unexpected and drastic pricing changes around 2018, the change amounted to a price increase of 1,400%. ¶¶20, 208. A market participant told the House Antitrust Subcommittee that Google instituted this price hike after "gaining dominance." ¶¶20, 209. Since becoming a Google Maps customer, a market participant's costs "have increased over 20x[.]" *Id.* A developer in the House Antitrust Proposals stated that the 2018 pricing change "took our bill from $90/month in October to $20,000/month in December." ¶210. Other developers similarly expressed their frustrations, noting that Google Maps' decision to hike

prices so sharply and without significant notice underscored its power to set the terms of commerce. ¶211.

**B. Defendants' Antitrust Damage to Plaintiffs and Other Class Members Include Other Anticompetitive Harm**

Defendants' conduct harms Plaintiffs and other Class members by depriving them of valid competitive choice, degrading privacy, degrading quality and variety of products and services offered, and stifling innovation. ¶198. These additional categories of anticompetitive harm have damaged Plaintiffs and other Class members, rendering the Class to be an effective mechanism to seek declaratory and injunctive relief—which Defendants ignore in their motions and briefing. ¶¶2, 122, 226, 236, 245, 263, 277, 286, 295. As a result of the anticompetitive conduct, Defendants have foreclosed other firms from competing in the relevant products markets of Maps APIs, Routes APIs, and Places APIs —and even cloud computing—to the detriment of Plaintiffs and other Class members. ¶199. Defendants' conduct goes far beyond "aggressive competition." ¶197. Their anticompetitive actions intend to and, in fact, have excluded rivals and harmed the competitive process. *Id.* This conduct is not competition on the merits, or even otherwise privileged. *Id.* Even worse, the conduct has been planned and thoroughly executed over many years—it is willful. *Id.*

There would be no confusion to the end user about the source of the digital-mapping information because Plaintiffs and other Class members can seamlessly display on a digital map the source of which APIs come from which competitors. ¶188. Developers, users, and mapping providers, including Plaintiffs, have questioned Google Maps' purported quality and confusing rationales to continue their anticompetitive tying of APIs, noting that developers are best positioned to determine whether combining APIs from multiple providers creates a "negative user experience." ¶192. One provider added, debunking Defendant's rationale, that the "developers we partner with are extremely sophisticated. They're not confused." *Id.*

Even with an ever-increasing stranglehold and strict control over Maps APIs, Routes APIs, and Places APIs, Defendants have done an abysmal—if not intentional or reckless—job of maintaining quality and accurate business-mapping features. ¶¶23, 186. The Antitrust House Subcommittee emphasized this phenomenon:

Although Google's responses to the Subcommittees' questions about its conduct regarding Google Maps emphasized "quality" and "user experience," … public reporting has documented that Google Maps' listings are "overrun with millions of false business addresses and fake names." … A survey of experts conducted by the Wall Street Journal estimated that Google Maps hosts around 11 million falsely listed businesses on any given day. … The same experts stated that "a majority" of the listings … are not actually located at the location given by Google Maps.

These fake listings endanger consumer safety, giving rise to situations where users of Google Maps have unknowingly requested home repairs and other services from fraudulent providers, ultimately, paying inflated prices for shoddy work. … The fraudulent listings also disadvantage legitimate businesses[.]

Legitimate businesses hurt by fake listings say that contacting Google to report the situation generally fails to resolve the problem. In practice, the only ways legitimate businesses can shield themselves from fake listings is to buy ads from Google. Ad prices for categories that are most susceptible to ad fraud have increased more than 50% over the last two years.

\*\*\*

Both digital advertisement experts and individuals engaging in fraudulent activity believe that Google has turned a blind eye to the problem. According to the Wall Street Journal, one ad specialist who was invited by Google to help root out the problem left after concluding that Google "has obviously chosen not to solve the problem." … A business owner who helps facilitate the fake listings says his activity leaves a "huge footprint" and yet Google is "just letting it happen." He added, "I know Google knows."

\*\*\*

[A] 67-year-old-woman contacted a local home repair service she found through Google, only to be serviced by a man who was pretending to be from the company she had hired. The man charged almost twice the cost of previous repairs and demanded a personal check or cash. The woman told the *Wall Street Journal*, "I'm at my house by myself with this guy. He could have knocked me over dead."

¶¶191, 221.

In addition to Google Maps' quality issues, the Defendants' Maps APIs, Routes APIs, and Places APIs do not even offer a full suite of APIs: there are bodies of APIs and other data within these relevant products markets that Google Maps does not offer, that competitors and the direct users themselves can provide, but that Plaintiffs and other Class members cannot access these needed bodies of APIs because of Defendants' anticompetitive negative and positive tying, bundling, exclusive dealing, monopolization, and attempted monopolization. ¶¶25, 190.

Moreover, Plaintiffs and other Class members would benefit from having back-up digital-mapping data through other competitors providing Maps APIs, Routes APIs, and Places APIs in addition to Google Maps, especially when its servers freeze or shut down, which has happened recently. ¶189. For example, around March 2022, Google Maps nearly experienced a complete world-wide failure and outage that lasted several hours, leaving the Class powerless to display their digital maps. *Id.* Having back-up data also would enable Plaintiffs and other Class members to truly experiment which competitor provides the highest-quality data. ¶189.

### C. Defendants Ignore Plaintiffs' Well-Pled, Detailed Factual Allegations

It is extremely telling that nowhere in the Motion to Strike Class nor the Motion to Dismiss do Defendants argue that (i) Plaintiffs do not have Article III standing nor suffered antitrust injury, (ii) there was an insubstantial foreclosure of competition, (iii) an insubstantial volume of commerce was affected, (iv) any purported procompetitive justifications that outweighed alleged anticompetitive harms, nor (v) the alleged unlawful activity did not cause antitrust harm. And, without mention, they side-step the injunctive and declaratory angle of the Class relief sought. Besides the improper procedural posture for them to attempt to first argue these points on reply briefing, *Dytch v. Yoon*, 2011 WL 839421, at *3 (9th Cir. Mar. 7, 2011) (parties cannot raise new issue for the first time in their reply); *Cytokinetics, Inc v. Pharm-Olam Intl., Ltd.*, 2015 WL 1056324, *4 (N.D. Cal. Mar. 10, 2015), they cannot substantively overcome Plaintiffs' well-pled allegations that together, during the Class Period, Plaintiffs have Article III and antitrust standing to represent the Class of direct users of Google Maps' Maps APIs, Routes APIs, and Places APIs who paid the inflated APIs prices or had their free credit tiers consumed more rapidly because of Defendants' inflated prices. ¶¶2, 28-31, 33-38, 40-42, 46, 48, 74-76, 122, 232-34.

Plaintiff Dream Big Media Inc. ("Dream Big Media") has used and paid for Google Maps' APIs (for example, Routes APIs) and due to the anticompetitive conduct alleged herein, was forced to use Google Maps' Maps APIs, Routes APIs, or Places APIs and other Defendants' products or services that it otherwise would not have used, and Dream was foreclosed by Defendants' anticompetitive conduct from using competing providers' Maps APIs, Routes APIs, or Places APIs,

nor mixing and combining Google Maps' Maps APIs, Routes APIs, or Places APIs with competitors' Maps APIs, Routes APIs, or Places APIs. ¶¶28-31, 232, 300.

Plaintiff Getify Solutions, Inc. ("Getify") has used Google Maps' Maps APIs, Routes APIs, and Places APIs in developing an app called RestaurNote that was intended to be free for its customers, having expended significant time, effort, and costs to do so. ¶¶33-38, 233. Defendants' anticompetitive conduct forced Getify to use Google Maps' Maps APIs, Routes APIs, and Places APIs, to the exclusion of using its competitors' Maps APIs, Routes APIs, and Places APIs in conjunction on the same digital map on its app. ¶¶33-38, 233. Ever since the change in the free-tier and pricing structure enforced by Defendants in the summer of 2018, Getify's free-tier credits have been exhausted, and the pricing structure renders Getify's newly created app RestaurNote unfeasible for public use to customers outside of close friends and family. ¶¶33-38, 233.

Plaintiff Sprinter Supplier LLC ("Sprinter") is an automotive parts store and, during the pandemic, began offering personal-protective equipment to distribute to frontline essential workers, and its digital presence for both businesses depended crucially on Maps APIs, Routes APIs, and Places APIs. ¶¶40-42. In response to Defendants' staggering prices for Google Maps' Maps APIs, Routes APIs, and Places APIs, Sprinter researched and found competing providers of Maps APIs, Routes APIs, and Places APIs that were of at least comparable quality and were free or significantly cheaper in price. ¶¶40-42. But because of Defendants' anticompetitive conduct alleged herein, Sprinter was forbidden from using the competitors' Maps APIs, Routes APIs, or Places APIs in combination with Defendants' Google Maps' Maps APIs, Routes APIs, and Places APIs, forcing it to only use Defendants' Google Maps' Maps APIs, Routes APIs, and Places APIs, along with being forced to use Defendants' other products or services, with the costs for Defendants' products quickly having become concerning. ¶¶40-42. Sprinter's free credits were quickly eaten up and depleted. ¶42. For example, in early February 2020, Sprinter experienced a charge of $5.74, depleting a credit balance that Google Maps had provided—indeed, it is even unclear given Defendant's reporting whether the credit balance handled this charge. ¶234.

### IV.   LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 23 provides that a court may "require that the

pleadings be amended to eliminate allegations about representation of absent persona and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). But class allegations are not tested at the pleading stage and are instead more properly scrutinized after a party has filed a motion for class certification. *Yastrab v. Apple Inc.,* 2015 WL 1307163, at *8 (N.D. Cal. Mar. 23, 2015). In fact, the 'rigorous analyses of class certification rulings require discovery and development of the record." *Perkins v. LinkedIn Corp.,* 53 F. Supp. 3d 1190, 1221 (N.D. Cal. 2014). Thus, motions to strike are regarded premature because they are often used solely to delay proceedings. *Capella Photonics, Inc. v. Cisco Sys., Inc.,* 77 F. Supp. 3d 850, 858 (N.D. Cal. 2014). As with motions to dismiss, the Court must view the motion to strike "in the light more favorable" to the plaintiff. *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.,* 301 F.R.D. 487, 489 (C.D. Cal. 2014) (citations omitted).

## V.     ARGUMENT

### A. DEFENDANTS' MOTION TO STRIKE CLASS IS PREMATURE AND SHOULD BE DENIED

Defendants' Motion to Strike Class is premature and should be denied. Motions to strike class allegations are premature when discovery has not commenced and no motion for class certification has been filed. *Velasquez v. HSBC Fin. Corp.*, 2009 WL 112919, at *4 (N.D. Cal. Jan. 16, 2009). In fact, motions to strike class allegations are disfavored because a motion for class certification is a "more appropriate" vehicle for arguments related to a proposed class. *Thorpe v. Abbott Labs., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008). Class actions are governed by Rule 23, not Rule 12(b)(6), and a Rule 23 analysis is more properly conducted after discovery and upon a motion for class certification. *Yastrab v. Apple Inc.,* 2015 WL 1307163, at *8 (N.D. Cal. Mar. 23, 2015) (denying motion to strike class allegations under Rule 23 as premature). Indeed, dismissal of class allegations at the pleading stage is rare because the shape and form of a class action evolves only through the process of discovery, none of which has taken place in this action. *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007). Here, Defendants' have requested that the Court strike Plaintiffs' class allegations without any discovery or any briefing on class certification. Only during discovery would the parties learn evidence related to Plaintiffs' claims and Defendants' defenses. Therefore, the Court should deny

1   Defendants' Motion to Strike Class as premature and allow the case to proceed to discovery and a

2   motion for class certification.

3         Demonstrating the slapdash, premature nature of Defendants' attempt to short-circuit this

4   Class without the benefit of any discovery or even a motion for class certification, Defendants in

5   their Motion to Strike Class, and even Motion to Dismiss, wholly ignore and thus concede at this

6   stage that Plaintiffs have alleged each of the following:

7           (i)     Article III standing and antitrust injury;

8           (ii)    The Class is expressly limited to direct victims and specifically excludes indirect

9                   victims;

10          (iii)   Plaintiffs and the Class include members who have paid artificially inflated prices

11                  for Google Maps' Maps APIs, Routes APIs, and Places APIs that allegedly resulted

12                  from the anticompetitive actions; and

13          (iv)   Plaintiffs and the Class seek injunctive and declarative relief.

14  These uncontested points alone should dispatch Defendants' attempt to entirely crater the proposed

15  Class without any discovery or even a motion for class certification. In fact, Plaintiffs limit the

16  proposed Class to "direct victims," and specifically exclude the indirect victims raised in

17  Defendants' hypothetical third-party developers. Under Plaintiffs' definition, a third-party

18  developer hired by a business owner to create a website and who used a Google Maps API would

19  not be considered a member of the Class if the owner paid for or received Google credits and did

20  not pass them fully to the third-party developer. Indeed, even if Plaintiffs' proposed Class is

21  potentially "over-inclusive", the class should be solved by refining the class definition rather than

22  by flatly denying *class certification* on that basis. *Olean Wholesale Grocery Coop., Inc. v. Bumble*

23  *Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022).

24        Moreover, Defendants use authority that is inapposite to Plaintiffs' allegations. In *Bruton v.*

25  *Gerber Prods. Co*., the parties spent "significant time and money litigating" over the span of years,

26  whereas this Class Action has no procedural history other than Defendants' two dispositive

27  motions. 2018 WL 4181903, at *6 (N.D. Cal. Aug. 31, 2018). Further, in *Brazil v. Dell Inc.*, the

28  Court granted Plaintiffs leave to amend the complaint because it determined that Texas, not

California law applied, to any fail-safe class allegations. 2008 WL 2693629, at *7 (N.D. Cal. July 7, 2008). And in *Morgan v. FedEx Corp.*, the Court granted a motion to strike class allegations because the Court lacked subject matter jurisdiction where the plaintiff failed to bring administrative charges. 2009 WL 10736798, at *4 (N.D. Cal. Dec. 17, 2009).

Defendants' Motion to Strike Class is premature and should be denied.

**B. PLAINTIFFS' PROPOSED CLASS, WHO SUFFERED ANTITRUST INJURY, ONLY INCLUDES THOSE WITH ARTICLE III STANDING**

Plaintiffs' proposed Class only includes those with Article III standing. To constitute an ascertainable class with Article III standing, class members must have suffered an injury. *Sanchez v. L.A. Dept. of Transp.*, 39 F.4th 548 (9th Cir. 2022) (collection of real-time location data of scooters was sufficient injury to confer Article III standing); *Klein v. Facebook, Inc.*, 2022 WL 141561, at *39 (N.D. Cal. Jan. 14, 2022) (finding antitrust standing where putative class members alleged that anticompetitive conduct caused them damages without having spent any money). Cognizable antitrust injury includes harm to a plaintiff's "business or property." 15 U.S.C. § 15. "Property" is a "broad and inclusive" term that includes "anything of material value owned or possessed." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 338, (1979). Plaintiffs proposed Class only includes those with Article III and antitrust standing because they have directly suffered injury as a result of Google's anticompetitive practices.

Plaintiffs and the Class suffered an antitrust injury because they paid Google Maps' inflated Maps APIs, Routes APIs, and Places APIs prices or had their free-credit tiers consumed more rapidly because of the inflated prices. ¶¶2, 28-31, 33-38, 40-42, 46, 48, 74-76, 122, 232-34. The proposed Class used Google Maps' Maps APIs and through the anticompetitive tying, negative tying, bundling, and exclusive dealing, they were forced to use Google Maps' other digital-mapping APIs or could not use other providers' digital-mapping APIs—for example, Routes APIs and Places APIs. *Id.* These costs skyrocketed for the Class and are often beyond their control because Google Maps does not permit caching, which would only charge once per user, but, instead, there is a charge each time a digital map is accessed, reloads, refreshes, and used. ¶8. Defendants' anticompetitive practices have resulted in concrete damages to every member of the Class, in part through staggering price hikes and more-rapid consumption of free-tier credits (the value for which

can easily be determined based on the corresponding prices that Google Maps charges for the same Maps APIs, Places APIs, and Routes APIs once the free-tier credits are depleted), for Google Maps' Maps APIs, Routes APIs, and Places APIs. ¶¶18, 122. Plaintiffs proposed Class only includes those with Article III and antitrust standing, which constitutes antitrust injury.

Instead of addressing Plaintiffs' Class allegations, Google now relies on inapposite authority to argue that Plaintiffs' proposed Class lacks injury. In *Lyons v. Bank of Am., NA*, the Court found that the proposed class definition, which sought to include unaffected mortgage obligators in the class, included many members who had not been injured. 2011 WL 6303390, at *7 (N.D. Cal. Dec. 16, 2011). And in *Sanders v. Apple Inc.*, the Court concluded that the proposed class definition, which sought to include all persons who owned (not purchased) an Apple computer, also included many members who had been injured. 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009). Neither of the cases apply here because Plaintiffs' proposed Class only includes those who were "direct purchasers, app or website developers, or other [direct] types of users" who "spent money or had their free-tier credits consume[d]" because of Google's anticompetitive practices, and the Class also includes member seeking injunctive and declaratory relief. ¶46. Google's authority is inapposite because, as defined, the proposed Class only encompasses those with standing.

Even those members of the proposed Class who only received free-tier credits have standing because the credits were an asset belonging to those Class members that inured them with benefits. And thus, losing the asset that inured them with benefits (the value for which can easily be determined based on the corresponding prices that Google Maps charges for the same Maps APIs, Places APIs, and Routes APIs once the free-tier credits are depleted) because of Defendants' anticompetitive practices constituted an injury in fact—if these were not assets and did not provide any benefits to Plaintiffs and the Class, Defendants would not have offered them. In fact, this Court has once already rejected Google's argument that there is no standing where the plaintiffs have not "plausibly alleged that they 'lost money or property' as a result of Google's conduct." *See Brown v. Google*, 2021 WL 6064009, at *15 (N.D. Cal. Dec. 22, 2021). The Court rejected this argument

because it concluded that there is a cash value of the data which Google collected and quantified. *Id.* Similarly, there is a cash value to Google's free-tier credits.

Indeed, numerous courts have recognized that plaintiffs who lose property for which they did not "pay for" have suffered an economic injury. *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021) ("[T]he Ninth Circuit and a number of district courts, including this Court, have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *13 (N.D. Cal. Aug. 30, 2017) (holding that plaintiffs had adequately alleged injury in fact based on the loss of value of their personal information); *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *14 (N.D. Cal. May 17, 2016) (same). Thus, there is ample support for Plaintiffs' argument that lost credits has material value. Defendants in arguing that such rapid consumption of the free-tier credits due to the alleged anticompetitive activity does not constitute damage do not cite any legal authority to support such a sweeping proposition. Plaintiffs have alleged that their free-tier credits were exhausted as a result of the alleged anticompetitive activity. ¶¶28-31, 33-38, 40-42, 232-34, 300.

Plaintiffs' proposed Class only includes those with Article III standing who suffered antitrust injury.

### C. PLAINTIFFS HAVE PROPERLY PROPOSED A CLASS THAT INCLUDES USERS INJURED BY GOOGLE'S ANTICOMPETITIVE PRACTICES, WHICH IS NOT A "FAIL-SAFE" CLASS

Plaintiffs have properly proposed a Class that includes users injured by Google's anticompetitive practices, which is not a "fail-safe" class. A fail-safe class is a class defined to include only those individuals who will prevail against the defendant. *Kamar v. RadioShack Corp.*, 375 Fed. App'x. 734, 736 (9th Cir. 2010). That is not the case here. Instead, Plaintiffs bring this action on behalf of themselves and under Rules 23(a), (b)(2), and (b)(3), a class of the following:

> From April 13, 2018, through the date that the alleged unlawful anticompetitive activity ceases, all direct purchasers, app or website developers, or other types of users of Maps APIs, Routes APIs, or Places APIs, or direct purchasers, app or website developers, or other types of users of Maps APIs, Routes APIs, or Places APIs who spent money or had their free-tier credits consumed more rapidly because

of the anticompetitive allegations therein, or other types of users who continue to experience anticompetitive harm as a result of the allegations herein.

¶46. Here, the proposed Class only seeks to include developers or other direct users who have purchased or used Google Maps' Maps APIs, Routes APIs, or Places APIs—a readily ascertainable class. *Id.* Further, Plaintiffs have demonstrated the harm to its proposed Class. For example, Dream Big Media paid for Google's digital-mapping APIs in the relevant products markets of Maps APIs, Routes APIs, and Places APIs and has incurred additional fees because of Google's tying, negative tying, bundling, exclusive dealing, monopolization, and attempted monopolization. ¶151. Plaintiffs have properly proposed a Class that includes direct users injured by Google's anti-competitive practices.

Moreover, the Ninth Circuit disapproves of the premise that a class can be "fail-safe." *Melgar v. CSK Auto, Inc.*, 681 F. App'x 605, 607 (9th Cir. 2017). Google's argument ignores the numerous district court decisions that have certified classes with "fail-safe" definitions. *Charlebois v. Angels Baseball, LP*, No. SACV 10–0853 DOC (ANx), 2011 WL 2610122, at *3 (C.D. Cal. June 30, 2011) (disability stadium access suit certifying a class consisting of persons who have or will "be denied equal access to wheelchair accessible seating, amenities, privileges, services and facilities of the Stadium on account of his/her disability."); *Gray v. Golden Gate Nat. Recreational Area*, 279 F.R.D. 501, 502–03 (N.D. Cal. 2011) (disability suit certifying class of persons "who are being denied programmatic access under the Rehabilitation Act of 1973 due to barriers at park sites"); *Moeller v. Taco Bell Corp.*, 2012 WL 3070863, at *1 (N.D. Cal. July 26, 2012) (noting court previously certified class of disabled persons who were denied "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of California Taco Bell."). In light of the Ninth Circuit's disapproval of the fail-safe class concept and the district court decisions certifying materially indistinguishable classes, the Court should reject Google's argument that Plaintiffs' class definition is impermissibly fail-safe.

## VI.   CONCLUSION

The Court should deny Google's Motion to Strike, which is an improper attempt to circumvent Rule 23 briefing. The answer to any lack of precise allegations in the Class definition—without the benefit of any discovery nor a motion for class certification—is not to crater the entire

1  Class; instead, the benefit of discovery and a motion for class certification is the proper juncture

2  for more precision in the Class definition.

3

4  Dated: August 30, 2022
       New York, New York

5

6                                           /s/ Justin S. Nematzadeh
                                            _____
                                            Justin S. Nematzadeh*
7                                           **NEMATZADEH PLLC**
                                            101 Avenue of the Americas, Suite 909
8                                           New York, New York 10013
                                            Telephone:    (646) 799-6729
9                                           jsn@nematlawyers.com
                                            *Attorney for Plaintiffs and the Class*
10                                          *Admitted via pro hac vice*

11                                          John G. Balestriere*
12                                          Matthew W. Schmidt (State Bar No. 302776)
                                            **BALESTRIERE FARIELLO**
13                                          225 Broadway, 29th Floor
                                            New York, New York 10007
14                                          Telephone:    (212) 374-5401
                                            Facsimile:    (212) 208-2613
15                                          john.balestriere@balestrierefariello.com
16                                          matthew.schmidt@balestrierefariello.com
                                            *Attorneys for Plaintiffs and the Class*
17                                          *Pro hac vice application forthcoming*

18                                          Mario Simonyan (State Bar No. 320226)
19                                          **ESQGo, PC**
                                            303 North Glenoaks Boulevard, Suite 200
20                                          Burbank, CA 91502
                                            Telephone:    (424) 363-6233
21                                          mario@esqgo.com
                                            *Attorney for Plaintiffs and the Class*
22

23

24

25

26

27

28