David C. Kiernan (State Bar No. 215335)
dkiernan@jonesday.com
Craig E. Stewart (State Bar No. 129530)
cestewart@jonesday.com
Lin W. Kahn (State Bar No. 261387)
lkahn@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, California 94104
Telephone: +1.415.626.3939
Facsimile: +1.415.875.5700

Catherine T. Zeng (State Bar No. 251231)
czeng@jonesday.com
JONES DAY
1755 Embarcadero Road
Palo Alto, California 94303
Telephone: +1.650.739.3939
Facsimile: +1.650.739.3900

Attorneys for Defendants
ALPHABET INC. and GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DREAM BIG MEDIA, INC., GETIFY SOLUTIONS, INC., and SPRINTER SUPPLIER LLC, Individually and on Behalf of all Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALPHABET INC. and GOOGLE LLC,<br><br>Defendants. | **Case No. 4:22-cv-02314-JSW**<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>Date:     September 30, 2022<br>Time:     9:00 a.m.<br>Judge:    Hon. Jeffrey S. White<br><br>Date Action Filed:  April 13, 2022 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

ARGUMENT ........................................................................................................ 2

I.    PLAINTIFFS HAVE FAILED TO STATE A TYING CLAIM. ...................................... 2

II.   PLAINTIFFS' OTHER ANTITRUST CLAIMS LIKEWISE FAIL. ............................... 7

      A.    Plaintiffs Have Not Stated a Bundling Claim. ......................................... 7

      B.    Plaintiffs Have Not Stated An Exclusive Dealing Claim. ........................ 7

      C.    Plaintiffs Have Not Stated a Monopoly Leveraging Claim. .................... 8

III.  PLAINTIFFS HAVE NOT VALIDLY PLED RELEVANT PRODUCT
      MARKETS OR MARKET POWER. .................................................................... 9

      A.    Plaintiffs' Relevant Market Allegations are Legally Insufficient. .......... 9

      B.    Plaintiffs Fail to Adequately Allege Market Power ............................... 11

IV.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER THE
      CALIFORNIA UNFAIR COMPETITION LAW. .................................................. 14

V.    THE COURT NEED NOT ADDRESS AT THIS JUNCTURE GOOGLE'S
      ACQUISITIONS OR THE STATUTE OF LIMITATIONS. ..................................... 14

CONCLUSION ................................................................................................... 15

1

2

# TABLE OF AUTHORITIES

**Page**

3     CASES

4
5     *Abcor Corp. v. AM Int'l, Inc.*,
        916 F.2d 924 (4th Cir. 1990)................................................................. 9

6
7     *AliveCor, Inc. v. Apple Inc.*,
        No. 21-CV-03958-JSW, 2022 WL 833628 (N.D. Cal. Mar. 21, 2022)................................. 12

8     *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
9       592 F.3d 991 (9th Cir. 2010)................................................................. 7

10    *Ashcroft v. Iqbal*,
        556 U.S. 662 (2009) ................................................................. 2
11

12    *Athos Overseas, Ltd. v. YouTube, Inc.*,
        No. 1:21-CV-21698, 2022 WL 910272 (S.D. Fla. Mar. 29, 2022)......................... 6

13
14    *Bell Atl. Corp. v. Twombly*,
        550 U.S. 544 (2007) ................................................................. 2

15    *Cascade Health Sols. v. PeaceHealth*,
16      515 F.3d 883 (9th Cir. 2008)................................................................. 4, 7

17    *Christou v. Beatport, LLC*,
18      849 F. Supp. 2d 1055 (D. Colo. 2012) ................................................................. 14

19    *Cost Mgmt. Servs., Inc. v. Washington Nat. Gas Co.*,
        99 F.3d 937 (9th Cir. 1996)................................................................. 8, 12, 13
20

21    *Dang v. San Francisco Forty Niners*,
        964 F. Supp. 2d 1097 (N.D. Cal. 2013) ................................................................. 11
22

23    *Datel Holdings Ltd. v. Microsoft Corp.*,
        712 F. Supp. 2d 974 (N.D. Cal. 2010) ................................................................. 4

24    *Delano Farms Co. v. California Table Grape Comm'n*,
25      623 F. Supp. 2d 1144 (E.D. Cal. 2009) ................................................................. 11

26    *Digidyne Corp. v. Data Gen. Corp.*,
27      734 F.2d 1336 (9th Cir. 1984)................................................................. 14

28

*Dominick v. Collectors Universe, Inc.*,
No. 2:12-CV-04782-ODW, 2012 WL 4513548 (C.D. Cal. Oct. 1, 2012) ............................ 13

*Eatoni Ergonomics, Inc. v. Research in Motion Corp.*,
486 F. App'x 186 (2d Cir. 2012) ......................................................................... 9

*Fed. Trade Comm'n v. Facebook, Inc.*,
560 F. Supp. 3d 1 (D.D.C. 2021) ......................................................................... 3

*Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*,
No. 3:11-CV-268 JD, 2013 WL 3214983 (N.D. Ind. Mar. 13, 2013) .................................... 14

*Hannah's Boutique, Inc. v. Surdej*,
No. 13 C 2564, 2013 WL 4553313 (N.D. Ill. Aug. 28, 2013) ............................................. 14

*Illinois Tool Works Inc. v. Indep. Ink, Inc.*,
547 U.S. 28 (2006) ......................................................................................... 14

*Kellam Energy, Inc. v. Duncan*,
668 F. Supp. 861 (D. Del. 1987) ........................................................................... 6

*Klein v. Facebook, Inc.*,
No. 20-CV-08570-LHK, 2022 WL 141561 (N.D. Cal. Jan. 14, 2022) ............................ 10, 12

*Mortg. Elec. Registration Sys., Inc. v. Koeppel*,
2020 WL 1233925 (N.D. Cal. Mar. 13, 2020) ........................................................... 11

*Nat'l Football League's Sunday Ticket Antitrust Litig.*,
933 F.3d 1136 (9th Cir. 2019) .............................................................................. 9

*Ohio v. Am. Express Co.*,
138 S. Ct. 2274 (2018) ..................................................................................... 13

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
555 U.S. 438 (2009) ......................................................................................... 9

*Paladin Assocs., Inc. v. Montana Power Co.*,
328 F.3d 1145 (9th Cir. 2003) ........................................................................... 5, 6

*Ploss v. Kraft Foods Grp., Inc.*,
197 F. Supp. 3d 1037 (N.D. Ill. 2016) ................................................................... 14

*RealPage, Inc. v. Yardi Sys., Inc.*,
852 F. Supp. 2d 1215 (C.D. Cal. 2012) ......................................................... 4, 11, 13

*Rumble, Inc. v. Google LLC*,
No. 21-CV-00229-HSG, 2022 WL 3018062 (N.D. Cal. July 29, 2022) ................................. 9

*Sambreel Holdings LLC v. Facebook, Inc.*,
906 F. Supp. 2d 1070 (S.D. Cal. 2012) ................................................................... 3, 4

*Smith v. eBay Corp.*,
No. C 10-03825 JSW, 2012 WL 27718 (N.D. Cal. Jan. 5, 2012)........................................... 4

*Sumotext Corp. v. Zoove, Inc*,
No. 16-CV-01370-BLF, 2020 WL 6544410 (N.D. Cal. Nov. 6, 2020)................................. 11

*Suture Exp., Inc. v. Cardinal Health 200, LLC*,
963 F. Supp. 2d 1212 (D. Kan. 2013) ...................................................................... 4

*Teradata Corp. v. SAP SE*,
No. 18-CV-03670-WHO, 2018 WL 6528009 (N.D. Cal. Dec. 12, 2018) ............................ 12

*Thompson v. Metro. Multi-List, Inc.*,
934 F.2d 1566 (11th Cir. 1991)............................................................................... 12

*United Energy Trading, LLC v. Pac. Gas & Elec. Co.*,
200 F. Supp. 3d 1012 (N.D. Cal. 2016) ................................................................... 12

*Universal Hosp. Servs., Inc. v. Hill-Rom Holdings, Inc.*,
No. CIV.A. SA-15-CA-32, 2015 WL 6994438 (W.D. Tex. Oct. 15, 2015)............................ 4

*Webkinz Antitrust Litig.*,
695 F. Supp. 2d 987 (N.D. Cal. 2010) ..................................................................... 11

*Webkinz Antitrust Litig.*,
No. C 08-1987 RS, 2010 WL 4168845 (N.D. Cal. Oct. 20, 2010)........................................ 12

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*,
513 F. Supp. 1100 (E.D. Pa. 1981) ......................................................................... 9

**INTRODUCTION**

Plaintiffs' opposition confirms that this case should be dismissed. Rather than address Google's arguments, plaintiffs largely echo the complaint's allegations without any attempt to defend why those allegations are not fatally deficient. Where plaintiffs do try to respond, their response proves that they have not stated a claim. The complaint fails to allege necessary elements of their legal theories and is bereft of basic facts that should be fully within plaintiffs' knowledge, demonstrating that dismissal is proper.

In support of their tying claim, plaintiffs argue that Google's Terms of Service prohibit them from "embed[ing]" or "overlay[ing]" non-Google content onto a Google digital mapping product or using non-Google "overlays" with Google products. Opp. 6, 7, 11. This argument fails for three reasons. First, as the courts have held, a seller's restrictions on how its own content is used or displayed is not a tying arrangement. Second, plaintiffs have not alleged facts showing that Google imposes any such restriction. The Terms of Service expressly do *not* prohibit embedding or overlaying non-Google content onto a Google Map. Third, plaintiffs allege no facts showing that they were coerced into purchasing any Google mapping API services even under their own theory. Their argument (*id*. at 11) that the Terms of Service "technically and practically" forced them into using Google's mapping API services rather than a competitor's is nothing more than a legal conclusion, unsupported by any facts, and thus not entitled to be taken as true.

Plaintiffs likewise offer no valid defense of their flawed bundling, exclusive dealing, and monopoly leveraging claims. They again recite their complaint's allegations but fail to address the fatal defects in those allegations. Plaintiffs have no bundling claim because they do not allege that Google bundled together two separate products for a single price; they have no exclusive dealing claim because they do not allege that Google required plaintiffs or other developers to deal exclusively with Google; and they have no monopoly leveraging claim because that claim is derivative of the others and fails in tandem.

As for market definition and market share, plaintiffs argue that the relevant product markets are "Maps APIs, Routes APIs, and Places APIs" because those services are allegedly

REPLY ISO MOTION TO DISMISS
Case No. 22-CV-2314-JSW

1    separate and not substitutes for "each other."  *Id*. at 9.  But that does not allege a valid relevant

2    market.  It's akin to saying that Cheerios and milk are relevant product markets because they are

3    not substitutes for each other.  The issue is not the separateness of the two products but whether

4    other products are substitutes for them (*i.e.*, what breakfast cereals or other breakfast foods

5    compete against Cheerios).  Thus, to validly allege a relevant market, plaintiffs were required to

6    identify whether other products or services are economic substitutes for any of the allegedly

7    separate API services.  Plaintiffs' opposition (like their complaint) is silent on that question.  And,

8    even if "Maps APIs, Routes APIs, and Places APIs" were valid relevant markets, plaintiffs do not

9    allege anything about Google's share of those purported markets.  Instead, they point only to

10   Google's alleged share of a purported "business-to-business" market, about which the complaint

11   alleges virtually nothing, and certainly not enough to show that Google's asserted share of that

12   market is in any way relevant to the claimed "Maps APIs, Routes APIs, and Places APIs"

13   markets.

14          To state a valid claim, plaintiffs were required to offer "more than labels and

15   conclusions."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  And no weight is afforded

16   to "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by

17   mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Because that is all

18   plaintiffs offer, their complaint should be dismissed.

19                                        **ARGUMENT**

20   **I.      PLAINTIFFS HAVE FAILED TO STATE A TYING CLAIM.**

21          Plaintiffs do not argue that Google refuses to sell one or more of its mapping API services

22   unless the customer also buys some other Google mapping API service.  Any customer may

23   purchase any Google mapping API service without purchasing another Google API service.

24   Plaintiffs also do not argue that Google refuses to sell any Google mapping API service unless the

25   customer refrains from purchasing digital mapping API services from a Google competitor.

26   Again, customers are free to purchase both Google mapping API services and non-Google

27   mapping API services.

28          Plaintiffs argue only that Google's Terms of Service restrict the manner in which Google

1    and non-Google mapping content may be used together on a customer's website or application.

2    According to plaintiffs, these restrictions prevented customers from "embedding" or "overlaying"

3    non-Google content onto a Google map, which purportedly forced them to purchase multiple

4    Google mapping API services when they wanted just one of them.  Opp. 2, 6, 11.  This argument

5    fails for three reasons.

6          First, it is not a tying arrangement for a company to prescribe the content of its own

7    product or how that content is displayed to consumers, even if the result is to limit use of

8    competitors' products.  In *Sambreel Holdings LLC v. Facebook, Inc.*, 906 F. Supp. 2d 1070, 1082

9    (S.D. Cal. 2012), for example, the court dismissed a claim that Facebook engaged in unlawful

10   tying when it specified that Facebook users could not run the plaintiff's software application on

11   their Facebook accounts.  The plaintiff's application permitted the display of advertising on the

12   user's Facebook page, and the plaintiff argued that Facebook prohibited it because it competed

13   with Facebook's own sale of advertising.  *Id*. at 1073–74.  According to the plaintiff, this was an

14   unlawful "negative tie" in which users were required to agree not to use the plaintiff's competing

15   services.  The court rejected that claim on the ground that Facebook "has a right to dictate the

16   terms on which it will permit its users to take advantage of the Facebook social network."  *Id*. at

17   1080.  No tie existed because Facebook had not "precluded its users from maintaining Sambreel

18   applications for use on other websites," but had only required "its users [to] disable certain

19   products before using its website."  *Id.*; *see also id*. at 1075 ("Facebook has a right to control its

20   own product, and to establish the terms with which its users, application developers, and

21   advertisers must comply in order to utilize this product."); *accord Fed. Trade Comm'n v.

22   Facebook, Inc.*, 560 F. Supp. 3d 1, 29 (D.D.C. 2021) (granting motion to dismiss claim that

23   Facebook had violated antitrust laws by (1) prohibiting third-party apps that worked on Facebook

24   from linking to, integrating with, or promoting a competing social network, and (2) prohibiting

25   app developer from using Facebook API services to export Facebook user data to competing

26   social network).

27          The same is true here.  Just as in *Sambreel*, plaintiffs argue that it is a tying violation for

28   Google to prevent them from "overlay[ing]" their own content or the content of other third parties

REPLY ISO MOTION TO DISMISS
Case No. 22-CV-2314-JSW

on Google's content.  Opp. 7.  That contention fails for the same reason it failed in *Sambreel*.
Even if plaintiffs were correct that overlaying content on a Google Map is prohibited, and they
are not, that would not mean that Google has prohibited plaintiffs or anyone else from purchasing
or using a competitor's mapping products.  It would mean only that Google has specified how its
mapping API services may be displayed to end users.  Having created a product that derives its
value from how it displays information to end-user consumers (*e.g.*, a digital map, directions,
information about places), Google is entitled to "establish the terms with which its users,
application developers, and advertisers must comply in order to utilize th[e] product."  *Sambreel*,
906 F. Supp. 2d at 1075.

Plaintiffs argue in a footnote that Facebook did not preclude users from using competitors'
applications outside of Facebook.  Opp. 13 n.5.  But that is equally true here because Google's
Terms of Service do not preclude developers from purchasing or using competing mapping API
services.  Plaintiffs' cases are not to the contrary, because none of them involved a company
merely seeking to control the content or presentation of its content in its own product.[1]

Second, plaintiffs have not alleged facts showing that Google in fact prohibits them or any
other user from "embedding" or "overlaying" non-Google content on a Google Map.  Nor can
they.  The Google Terms of Service do not impose any such restriction.  By their express
language, they are addressed only to using Google content with or near *a non-Google Map*.  ECF
1, ¶ 157 ("No Use With Non-Google Maps.  To avoid quality issues and/or brand confusion,
Customer will not use the Google Maps Core Services with or near a non-Google Map in a
Customer Application.").  Plaintiffs highlight clause (iii) in the examples in the Terms of Service,

---

[1] *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883 (9th Cir. 2008) (alleged tie between primary
care medical services and tertiary services)*; Smith v. eBay Corp.*, No. C 10-03825 JSW, 2012 WL
27718, at *6 (N.D. Cal. Jan. 5, 2012) (payment mechanism for on-line auction); *Datel Holdings
Ltd. v. Microsoft Corp.,* 712 F. Supp. 2d 974 (N.D. Cal. 2010) (memory cards for video games)*;
RealPage, Inc. v. Yardi Sys., Inc.,* 852 F. Supp. 2d 1215 (C.D. Cal. 2012) (software application
and cloud hosting service)*; Suture Express, Inc. v. Cardinal Health 200, LLC*, 963 F. Supp. 2d
1212 (D. Kan. 2013) (specialized sutures and general sutures)*; Universal Hosp. Servs., Inc. v.
Hill-Rom Holdings, Inc.,* No. CIV.A. SA-15-CA-32-FB, 2015 WL 6994438 (W.D. Tex. Oct. 15,
2015) (hospital beds and other types of medical equipment).

which refers to "link[ing]" a Google Map to non-Google Maps content or a non-Google map.  *Id.*  But embedding or overlaying non-Google content on a Google Map itself does not fall within this example because it is not "linking" the Google Map to other maps or mapping content.  Plaintiffs allege no facts showing that Google has ever applied the Terms of Service in that manner, against plaintiffs or any other user.

Third, plaintiffs have not alleged facts showing that any of them was coerced to make (or refrain from making) any purchase even under their own theory.  Plaintiffs assert that the "main tying product" is Google Maps API services, and that the tied products are Routes and Places API services.  Opp. 11.  To validly allege a tie under this theory, plaintiffs were required to plead facts showing at a minimum that they (1) purchased a Maps API service from Google, (2) wanted to purchase a Routes or Places API service from a competitor to use along with the Google Maps API service but (3) were forced to buy the Routes or Places API service from Google instead (or to refrain from buying it from a competitor).  *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003) (tying requires "that the defendant . . . coerced or forced its customer to buy the tied product in order to obtain the tying product.").

As shown in Google's motion (at 3–4, 8), plaintiffs plead no facts showing that was true of any of them.  Dream Big Media alleges that it paid for a "Distance Matrix API" (a Routes API service), but does not allege that it was coerced into doing so by having purchased a Google Maps API service.  ECF 1, ¶ 29.  Indeed, it does not allege that it purchased any Google Maps API service at all.  For all the complaint reveals, Dream Big Media thus purchased the alleged tied product without purchasing the alleged tying product.  That is the opposite of plaintiffs' tying theory.  If a customer buys the tied product without buying the tying product, it cannot claim that the tying product had anything to do with that purchase, let alone that it coerced the purchase.  And, even if Dream Big Media had purchased a Google Maps API service, it alleges no facts showing that this purchase coerced Dream Big Media into its alleged purchase of the Distance Matrix API, as plaintiffs' theory requires.  The absence of these facts is fatal to plaintiffs' claim.

The complaint is similarly deficient as to the other plaintiffs.  Neither of them identifies which Google API services it purchased, let alone that it purchased a Google Maps API service.

REPLY ISO MOTION TO DISMISS
Case No. 22-CV-2314-JSW

1    Nor do they allege that any purchase of a Google Maps API Service coerced them into purchasing

2    another Google API service or to refrain from purchasing from a competitor. *See* Mot. 3–4.

3        Plaintiffs argue that, "technically and practically," customers that wished to use Google

4    Routes or Places API services without using Google Maps API services could not do so. Opp. 2,

5    6, 11. This argument—which posits that the tying products are Routes and Places API services

6    rather than Maps API services—also fails. If in fact any plaintiff was "technically" or

7    "practically" coerced by a Google Routes or Places API services purchase into also purchasing

8    Google Maps API services, plaintiffs must identify what Google Routes or Places API service

9    that plaintiff purchased, allege that the plaintiff was forced to purchase Google Maps API services

10   that it did not want to purchase, and allege the technical, practical, or other factors that created

11   such coercion. *Paladin*, 328 F.3d at 1159. Plaintiffs' complaint contains none of this.

12       Plaintiffs offer no explanation for their failure to allege the required facts, all of which are

13   in their knowledge. Nor do they suggest that they can amend their complaint to cure the

14   deficiencies. The Court should accordingly dismiss their complaint with prejudice.

15       Plaintiffs also offer no valid explanation for their failure to allege that Getify Solutions or

16   Sprinter Supplier ever paid for any Google mapping API services. Plaintiffs do not claim that

17   either plaintiff in fact made such payments. They argue only (in their opposition to Google's

18   motion to strike) that the two companies' free credits were depleted more rapidly when Google

19   raised the price for calls on its API services. ECF 34, p. 2. But that is simply an assertion that

20   Google reduced the amount of free services it offered. It does not mean that either plaintiff

21   purchased anything from Google, let alone that it was coerced into making any other purchase, as

22   a tying claim requires. "Acceptance of a free service does not constitute an impermissible tie-in."

23   *Athos Overseas, Ltd. v. YouTube, Inc.*, No. 1:21-CV-21698, 2022 WL 910272, at *3 (S.D. Fla.

24   Mar. 29, 2022); *Kellam Energy, Inc. v. Duncan*, 668 F. Supp. 861, 881 (D. Del. 1987) ("Merely

25   accepting something provided for free does not constitute an impermissible tie-in.").

26       Plaintiffs' other tying arguments also fail. They assert that Google engaged in "positive

27   tying" by "unilaterally add[ing] on" additional API services when a customer orders a Google

28   Maps API service. Opp. 7. But they do not respond to Google's showing (Mot. 6–7), that none

1    of them alleges this happened to them, and they do not identify any other customer to whom it

2    supposedly did happen.  Nor do they respond to the point that, according to their own allegations,

3    a customer incurs no charge for an API service unless the customer's application is programmed

4    to call on the service and calls are actually made.  *See* Mot. 7.  Thus even if Google had "added

5    on" an API service, no customer was required to actually use it or pay anything for it.  Plaintiffs

6    offer nothing to the contrary.

7    **II.    PLAINTIFFS' OTHER ANTITRUST CLAIMS LIKEWISE FAIL.**

8          **A.    Plaintiffs Have Not Stated a Bundling Claim.**

9          Plaintiffs argue that Google "bundle[s]" its mapping API services with Google Cloud

10   Platform ("GCP") because customers wishing to use an API service must have a GCP account.

11   Opp. 15.  But plaintiffs do not allege that having a GCP account obligated them or any other

12   customer to purchase or use any GCP product or service.  Instead, they argue that the GCP

13   account was used to create an "API key," which was then used to track calls to the API services

14   for billing purposes.  Opp. 15; ECF 1, ¶ 6.  Plaintiffs thus allege only that they used API services

15   and had a billing account, not that Google sold them separate services for a single price.  *Cascade*

16   *Health Sols. v. PeaceHealth*, 515 F.3d 883, 894 (9th Cir. 2008) ("Bundling is the practice of

17   offering, for a single price, two or more goods or services that could be sold separately.").

18   Plaintiffs argue without any supporting facts that the charge for the GCP account was "baked

19   into" the price for the API calls.  Opp. 15.  But even if that were true, it would not mean that

20   Google was bundling anything, any more than any company engages in bundling merely by not

21   charging separately for its billing costs associated with the sale of its products or services.

22         **B.    Plaintiffs Have Not Stated An Exclusive Dealing Claim.**

23         Plaintiffs do not dispute that an exclusive dealing claim requires an agreement that

24   "prevents the buyer from purchasing a given good from any other vendor." *Allied Orthopedic*

25   *Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 996 (9th Cir. 2010).  Plaintiffs do

26   not point to any such agreement between any of them and Google.  They argue that they were

27   "force[d] . . . to entirely enter Google Maps' ecosystem" because they "can only use Google

28   Maps' Maps APIs, Routes APIs, and Places APIs" rather than a competitor's.  Opp. 15.  They call

REPLY ISO MOTION TO DISMISS
Case No. 22-CV-2314-JSW

1    this a "form of exclusive dealing." *Id*.  But this contention is just their tying claim by another

2    name.  It fails for the same reasons discussed above—the complaint alleges no facts showing that

3    plaintiffs cannot purchase or use competitors' API services.  *See* Mot. 12–13.  And, even if

4    plaintiffs had identified any customers who were forced to use only Google's API services, their

5    claim still fails because plaintiffs do not allege that any such customers comprised a large enough

6    portion of the market to substantially foreclose competition.  *See id*.

7         Plaintiffs also cite their allegations that Lyft and Uber "rely" on Google Maps.  Opp. 15–

8    16 (citing ECF 1, ¶¶ 214–217).  But plaintiffs nowhere allege that either company was forced to

9    deal exclusively with Google, much less allege any facts showing that any exclusive arrangement

10   (if it existed) substantially foreclosed competition as would be necessary to support an exclusive

11   dealing claim.  Plaintiffs also assert that Google had an exclusive dealing contract with Ford, but

12   again allege nothing showing why this alleged agreement is unlawful (*e.g.*, the percentage, if any,

13   of any relevant market foreclosure).  They point only to their allegation that Google has a 90%

14   share of the "business-to-business" market.  Opp. 16.  As discussed below (at 12), that conclusory

15   allegation is insufficient because it is bereft of any facts indicating that it has anything to do with

16   the services at issue in this case.  And it certainly does not describe how much of any relevant

17   market is foreclosed by whatever agreement Google has with Ford, Lyft, or Uber.

18         **C.    Plaintiffs Have Not Stated a Monopoly Leveraging Claim.**

19         Plaintiffs do not address their monopoly leveraging theory except to assert that monopoly

20   leveraging can be actionable if the plaintiff proves the elements of an attempted monopolization

21   claim.  As their cases explain, however, the plaintiff "must establish each of the elements

22   normally required to prove an attempted monopolization claim under section 2 of the Sherman

23   Act."  *Cost Mgmt. Servs., Inc. v. Wash. Nat. Gas Co.*, 99 F.3d 937, 952 (9th Cir. 1996).

24   Plaintiffs' monopoly leveraging claim thus fails for the reason stated in Google's motion—a

25   section 2 claim requires exclusionary conduct, which plaintiffs have not alleged.  *See* Mot. 13–14.

26   The only alleged exclusionary conduct is the purported tying, bundling, and exclusive dealing

27   arrangement that plaintiffs have failed to show is actionable.  (Plaintiffs also refer to "self-

28   preferencing" but offer no response to Google's showing that that allegation lacks any merit.  *See*

REPLY ISO MOTION TO DISMISS
Case No. 22-CV-2314-JSW

1   Mot. 14.)

2          Plaintiffs argue that their allegations must be considered in their "totality" and not

3   "compartmentalized." Opp. 16–17. That argument does not salvage their complaint for two

4   reasons. First, unlike in the cases plaintiffs cite, plaintiffs' core challenge is not to multiple

5   agreements or alleged restraints on competition.[2] Instead, plaintiffs allege a single restraint under

6   different rubrics—Google's purported insistence that customers purchase only Google mapping

7   API services. Second, even if plaintiffs were deemed to be challenging different agreements or

8   restraints, plaintiffs' allegations still assert nothing more than lawful practices. Whether

9   considered separately or together, they do not amount to an antitrust violation. *Pac. Bell Tel. Co.*

10  *v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 457 (2009) (rejecting argument that independently

11  lawful price-setting could be found unlawful when taken together: "Two wrong claims do not

12  make one that is right."); *Eatoni Ergonomics, Inc. v. Research in Motion Corp.,* 486 F. App'x

13  186, 191 (2d Cir. 2012) (when "alleged instances of misconduct are not independently anti-

14  competitive . . . they are not cumulatively anti-competitive either"); *Abcor Corp. v. AM Int'l, Inc.*,

15  916 F.2d 924, 930–31 (4th Cir. 1990) (finding that aggregating a defendant's acts, none of which

16  was anticompetitive individually, did not demonstrate an injury to competition); *Zenith Radio*

17  *Corp. v. Matsushita Elec. Indus. Co.*, 513 F. Supp. 1100, 1311 (E.D. Pa. 1981) (rejecting

18  aggregation of claims because "[n]othing plus nothing times nothing still equals nothing").

19  **III.   PLAINTIFFS HAVE NOT VALIDLY PLED RELEVANT PRODUCT MARKETS**

20  **OR MARKET POWER.**

21          **A.   Plaintiffs' Relevant Market Allegations are Legally Insufficient.**

22          Plaintiffs' opposition confirms their failure to allege valid relevant markets. They do not

23  

---

24  [2] *In re Nat'l Football League's Sunday Ticket Antitrust Litig*., 933 F.3d 1136, 1153 (9th Cir.
    2019) (plaintiffs challenged separate but "interlocking" agreements—one vertical agreement
25  between NFL and broadcaster, and one horizontal agreement among NFL teams); *Rumble, Inc. v.*
    *Google LLC*, No. 21-CV-00229-HSG, 2022 WL 3018062, at *1–2 (N.D. Cal. July 29, 2022)
26  (plaintiff claimed that YouTube videos are favored in search results and also challenged various
    agreements with device manufacturers and distributors regarding pre-installation of YouTube
27  app).

28

1   contest that the relevant product market must be defined in terms of "economic substitutes" for

2   the defendant's product, measured in terms of reasonable interchangeability of use or cross-

3   elasticity of demand.  *See* Opp. 9.  Their only argument is that they have supposedly complied

4   with this requirement.  But their complaint belies that assertion.  It alleges only that Maps APIs,

5   Routes APIs, and Places APIs—the labels Google applies to its categories of digital mapping API

6   services—are relevant product markets.  ECF 1, ¶¶ 74–76.  The complaint does not contain any

7   factually supported allegations that there are no economic substitutes to any of these API services

8   for a developer to display a location, provide directions, or show information about the location

9   on a website or application.

10      Rather than alleging facts showing the absence of economic substitutes, plaintiffs argue

11   only that Maps APIs, Routes APIs, and Places APIs are separate and distinct from each other.

12   *See* Opp. 9 (*citing* ECF 1, ¶¶ 3–5, 13, 63–67, 71–76, 89, 127, 254, 268 (allegations that Maps,

13   Routes, and Places APIs are separate from each other and conclusory allegations that each is a

14   relevant product market)).  Even if that were true (and plaintiffs have not alleged facts showing

15   even that), it would not help plaintiffs.  It would mean only that those API services are not in the

16   same product market with each other—*i.e.*, that Maps API services are in a different product

17   market from Routes or Places API services.  The question would still remain whether there are

18   competing products to which users can turn as substitutes for those allegedly distinct products—

19   *i.e.*, whether there are substitutes for Maps API services or substitutes for Places API services.

20   The complaint is silent on this critical question.

21      Plaintiffs' failure to allege any facts showing the absence of substitutes for these various

22   products is fatal to their market definition.  As plaintiffs' own cases recognize, a plaintiff must

23   allege the factors "*of both* the service at issue *and its potential substitutes*" that render them "not

24   reasonably interchangeable in the eyes of users."  *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743,

25   766 (N.D. Cal. 2022) (cleaned up; emphasis added).  In *Klein*, the court upheld the plaintiffs'

26   proposed market definitions based on (a) the specific allegations regarding the features of "social

27   network services" that made it a plausible relevant market and (b) the "detail" provided by

28   plaintiffs on why other ostensible competing products were not reasonably interchangeable.  *Id.*

1    Similarly, in *RealPage, Inc. v. Yardi Sys., Inc.*, 852 F. Supp. 2d 1215, 1225 (C.D. Cal. 2012), the

2    court accepted as plausible a market definition because the complaint "consider[ed] and reject[ed]

3    multiple conceivably interchangeable substitutes in great factual detail."[3]  Here, plaintiffs provide

4    no facts regarding the nature of their proposed markets or which services and competitors might

5    be in them; they simply ask the Court to accept their conclusory allegations that Maps APIs,

6    Routes APIs, and Places APIs are each a relevant product market.

7          Plaintiffs assert that "whether the market should include other products is better resolved

8    at summary judgment or by a jury."  Opp. 9.  But they do not dispute that courts have not

9    hesitated to dismiss complaints where, as here, the relevant market allegations are insufficient on

10   their face.  *See* Mot. 9.  Nor is there any merit to plaintiffs' assertion that it "is telling that

11   Defendants fail to suggest a plausible alternative relevant products market."  Opp. 10.  Plaintiffs

12   cite nothing that imposes such a requirement on Google.  *Cf. Sumotext Corp. v. Zoove, Inc*, No.

13   16-CV-01370-BLF, 2020 WL 6544410, at *6 (N.D. Cal. Nov. 6, 2020) ("Defendants were not

14   required to offer an alternative market definition.").

15         **B.      Plaintiffs Fail to Adequately Allege Market Power**

16         Even if plaintiffs' alleged product markets were valid, plaintiffs have not validly alleged

17   market power in those markets.  As Google explained, the complaint alleges two different market

18   shares:  (1) that Google had 80% or more of the "navigation app market"; and (2) that Google

19   Maps APIs capture "over 90% of the business-to-business market."  Mot. 11.  Plaintiffs do not

20   defend the first allegation—implicitly conceding that the "navigation app market" for consumers

21   is not the same as the market for API services sold to developers.  *Mortg. Elec. Registration Sys.,*

22   *Inc. v. Koeppel*, No. 5:18-cv-03443-EJD, 2020 WL 1233925, at *3 (N.D. Cal. Mar. 13, 2020)

23

24   _____

     [3] Plaintiffs' other cases are inapposite.  Two of them relied on the fact that prior cases had upheld
25   the same or similar market definitions at the pleadings stage.  *See Dang v. San Francisco Forty*
     *Niners*, 964 F. Supp. 2d 1097, 1104–05, 1107–09 (N.D. Cal. 2013); *In re Webkinz Antitrust Litig.*,
26   695 F. Supp. 2d 987, 995 (N.D. Cal. 2010).  Plaintiffs cite no case upholding a market defined in
     terms of the API services that a defendant groups together (or any API services-based markets at
27   all).  *Delano Farms Co. v. California Table Grape Commission*, 623 F. Supp. 2d 1144, 1177
     (E.D. Cal. 2009), is irrelevant because the court granted the defendant's motion to dismiss where
28   the plaintiff's opposition brief asserted a new market definition not alleged in the complaint.

1   ("When a plaintiff files an opposition to a motion to dismiss addressing only certain arguments

2   raised by the defendant, a court may treat those arguments that the plaintiff failed to address as

3   conceded." (cleaned up)).

4          Plaintiffs instead rely on the purported "business-to-business market." Opp. 14.  But

5   nothing in plaintiffs' complaint or the U.S. House Report upon which the complaint relies

6   explains what this purported market is.  Nor does the House Report even vouch for the accuracy

7   of the 90% figure, stating only that it is an "estimate" from one unidentified "market participant."

8   ECF 35-1, p. 234.  Further, whatever the "business-to-business market" is, plaintiffs allege no

9   facts showing that it corresponds to any of three purported product markets—Maps APIs, Routes

10  APIs, or Places APIs—that plaintiff argues are the relevant markets.  There is thus no basis for

11  concluding that Google's purported share of this unexplained market has any relevance to any

12  market at issue in this case.  Plaintiffs' cases on this point are inapposite because (unlike here) the

13  plaintiff in those cases alleged facts showing the defendant's share of the *relevant market* that the

14  plaintiffs alleged.  *See Klein*, 580 F. Supp. 3d at 776–77; *AliveCor, Inc. v. Apple Inc.*, No. 21-CV-

15  03958-JSW, 2022 WL 833628, at *8 (N.D. Cal. Mar. 21, 2022); *Cost Mgmt. Servs*, 99 F.3d at

16  951; *Teradata Corp. v. SAP SE*, No. 18-CV-03670-WHO, 2018 WL 6528009, at *15 (N.D. Cal.

17  Dec. 12, 2018) (defendant did not dispute sufficiency of market power allegations).  *In re*

18  *Webkinz Antitrust Litigation*, No. C 08-1987 RS, 2010 WL 4168845 (N.D. Cal. Oct. 20, 2010), is

19  similarly unhelpful to plaintiffs.  There, the court relied on the fact that there was plausibly a

20  "correlation" between the defendant's share of "website traffic" and its share of product sales and

21  the complaint included "some comparative sales estimates" to bridge the gap between the market

22  alleged and the data relied on.  *Id.* at *3 & n.5.  Here, plaintiffs have not included anything other

23  than a conclusory allegation about Google's market share in an undefined market.[4]

24

25   ───────────────

26  [4] Plaintiffs' other cases are also irrelevant.  *See United Energy Trading, LLC v. Pac. Gas & Elec.*
    *Co*., 200 F. Supp. 3d 1012, 1023 (N.D. Cal. 2016) (not addressing sufficiency of market power

27  allegations); *Thompson v. Metro. Multi-List, Inc*., 934 F.2d 1566, 1577 (11th Cir. 1991) (evidence
    in the record supported the conclusion that there were no competitors or alternatives in the

28  relevant market).

Plaintiffs also argue that they have adequately alleged "direct demonstrations" of market power such as supracompetitive prices, restricted output, diminished quality, or exclusion of competition.  Opp. 13 (citing ECF 1, ¶¶120–121, 128, 197–198, 223–224, 255, 270–271).  This argument fails for two reasons.  First, even when alleging supposed direct evidence of market power, plaintiffs still must define a relevant market, which plaintiffs here have not done.  *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 n.7 (2018) (holding that, in cases alleging vertical restraints (like this one), valid relevant market definition is required).  Second, plaintiffs' conclusory allegations do not show market power because plaintiffs allege no facts showing that Google's pricing was higher, or its output or quality lower, than what would have existed absent the alleged restraint.  *See* ECF 1, ¶ 120 (allegation regarding percent of users who search for a nearby location that actually visit the searched-for location); ¶ 121 (allegation regarding Google Maps' "user base" without distinguishing between end users and API purchasers); ¶ 128 (allegation regarding Google Maps revenue and market capitalization without comparison to any other map API providers); ¶ 187 (alleging only that Google's API pricing is "materially more" than competitors); ¶¶ 197–198, 223–224 (conclusory allegations that Google's conduct has "excluded rivals and harmed the competitive process" and "harm[ed] app and website developers"); ¶¶ 255, 270–271 (conclusory allegations that Google has "sufficient market power" and has "substantially foreclos[ed] competition").  *See Dominick v. Collectors Universe, Inc*., No. 2:12-CV-04782-ODW, 2012 WL 4513548, at *7 (C.D. Cal. Oct. 1, 2012) (finding allegations of purported direct market power insufficient where there were no allegations of defendants' ability to affect market-wide supply by suppressing their own supply and no "comparison between the 'higher prices' consumers are forced to pay" for products sold on Defendants' website versus other platforms).  None of the cases plaintiffs cite credit such generic and conclusory allegations of market power without more.[5]

---

[5] *Cost Mgmt. Servs*, 99 F.3d at 950 (plaintiff alleged a 90% market share in the relevant market and that defendant had the ability to charge off-tariff prices); *RealPage*, 852 F. Supp. 2d at 1227 (plaintiff pleaded with "some particularity two discrete examples in which [the defendant] has wielded its economic advantage in its Voyager software to the competitive detriment to the RealPage Cloud"); *Ploss v. Kraft Foods Grp., Inc*., 197 F. Supp. 3d 1037, 1071 (N.D. Ill. 2016)

1
2
## IV.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER THE CALIFORNIA UNFAIR COMPETITION LAW.

3      Plaintiffs do not dispute that their UCL claim is governed by the same standard as their

4  antitrust claims.  Opp. 18; *see* Mot. 17.  The Court should accordingly dismiss the UCL claim for

5  the same reasons as the antitrust claims.

6
7
## V.   THE COURT NEED NOT ADDRESS AT THIS JUNCTURE GOOGLE'S ACQUISITIONS OR THE STATUTE OF LIMITATIONS.

8      Plaintiffs expressly disavow any claim that they are challenging the Waze acquisition, and

9  they do not assert that they challenge any other acquisition.  *See* Opp. 18.  The Court thus need

10  not address the merits or timeliness of any such claim.  The Court also need not address at this

11  juncture plaintiffs' assertion that the Waze acquisition "demonstrate[s] the progression of Google

12  Maps' empire."  *Id*.  Google denies that its acquisitions are relevant to any issue in this case.  But

13  if the Court wants to address this question at all, then it can and should be addressed at a later

14  stage only if the case survives.  The Court also need not address any statute of limitations issues

15  at this juncture, given that plaintiffs state that they are not seeking to recover damages for any

16  period before the four-year limitations period and given that Google's current motion did not

17  otherwise raise the statute of limitations as a defense.  Google does not concede, however, that

18  plaintiffs' claims are timely and reserves its right to assert that defense should the case progress.

19

20  (relying on detailed allegations of how defendant controlled prices and allegation that defendant
   had 87% of open interest in wheat where alleged market was "wheat futures contracts");
21  *Hannah's Boutique, Inc. v. Surdej*, No. 13 C 2564, 2013 WL 4553313, at *4 (N.D. Ill. Aug. 28,
22  2013) (outlining the "numerous specific allegations" of market power); *Gumwood HP Shopping
   Partners, L.P. v. Simon Prop. Grp., Inc*., No. 3:11-CV-268 JD, 2013 WL 3214983, at *11 (N.D.
23  Ind. Mar. 13, 2013) (relying on allegations regarding the "special attribute[s]" of defendant's
   store locations and allegations that the defendant held lease renewals at these allegedly desirable
24  locations "hostage").  In *Christou v. Beatport, LLC*, 849 F. Supp. 2d 1055, 1067 (D. Colo. 2012),
   the court found plaintiffs' allegations sufficient without elaborating on the nature of the
25  allegations.  Plaintiffs also cite *Digidyne Corp. v. Data General Corp*., 734 F.2d 1336, 1340 (9th
   Cir. 1984), which discussed the per se standard for tying claims before the Supreme Court made
26  clear that "in all cases involving a tying arrangement, the plaintiff must prove that the defendant
   has market power in the tying product."  *Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28,
27  46 (2006).

28

1

**CONCLUSION**

2

The complaint should be dismissed with prejudice.

3

4
Dated: September 20, 2022                         JONES DAY

5

6                                                 By: */s/ David C. Kiernan*
                                                      David C. Kiernan

7
                                                  Attorneys for Defendants
8                                                 Alphabet Inc. and Google LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28