UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DREAM BIG MEDIA INC., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ALPHABET INC., et al.,<br><br>    Defendants. | Case No.  22-cv-02314-JSW<br><br>**ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION TO STRIKE CLASS ALLEGATIONS**<br><br>Re: Dkt. Nos. 29, 30 |

Now before the Court for consideration are the motion to dismiss and motion strike filed by Defendants Google LLC and Alphabet Inc. (collectively, "Google"). The Court has considered the parties' papers, relevant legal authority, and the record in the case, and it finds this matter suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). For the following reasons, the Court GRANTS Google's motion to dismiss and DENIES Google's motion to strike.

**BACKGROUND**

Plaintiffs Dream Big Media, Getify Solutions, Inc. ("Getify"), and Sprinter Supplier LLC ("Sprinter Supplier") (collectively, "Plaintiffs") are three businesses that allegedly use Google mapping services, including application programming interfaces ("APIs"), to display or use maps or maps-related information on their websites or mobile applications. The crux of Plaintiffs' complaint is that Google unlawfully ties its Maps, Routes, and Places API services together by purportedly refusing to sell one API service unless the purchaser also agrees to purchase another Google mapping service or agrees to refrain from purchasing API services from other companies. Plaintiffs allege that this conduct, combined with Google's alleged market power, allows Google to charge higher prices for its mapping API services. Plaintiffs allege Google's actions constitute unlawful tying, bundling, exclusive dealing, and monopoly leveraging in violation of the Sherman

1    Act, the Clayton Act, and California's Unfair Competition Law.

2            Dream Big Media is a digital-advertising business that has used and paid for Google's
3    digital-mapping APIs. (Compl. ¶ 28.) Dream Big Media has used Google Maps Route APIs to
4    determine the distance between two zip codes. (*Id.* ¶ 29.) Plaintiffs allege that Dream Big Media
5    could not use competing providers' digital-mapping APIs and could not mix and combine
6    Google's digital-mapping APIs with competitors' digital-mapping services. (*Id.* ¶ 30.)

7            Getify developed a mobile web app called RestaurNote that allowed users to make
8    notations about experiences related to their physical location. (*Id.* ¶ 33.) RestaurNote used credits
9    offered by Google to utilize Google's web-based digital-mapping APIs. (*Id.* ¶¶ 35, 37.) Plaintiffs
10   allege that after Google increased the price of its digital-mapping APIs, use of the services became
11   "unworkable" for RestuarNote. (*Id.* ¶ 37.) Plaintiffs allege that Getify could not combine the use
12   Google's digital-mapping APIs with APIs from other providers if any of the data interacted with
13   Google's digital-mapping capabilities. (*Id.* ¶ 38.)

14           Sprinter Supplier is an e-commerce automotive parts shop that wanted to use digital-
15   mapping APIs to help local customers find its business. (*Id.* ¶ 40.) Plaintiffs allege that Sprinter
16   Supplier searched for providers to use as an alternative to or in combination with Google's digital-
17   mapping APIs because of the high prices Google charged for its services. (*Id.* ¶ 41.) Plaintiffs
18   allege, however, that because of Google's anticompetitive conduct, Sprinter Supplier could not use
19   competing providers' digital-mapping APIs. (*Id.* ¶ 42.) As a result, Sprinter Supplier used
20   Google's products and services, which depleted the free credits Google had offered. (*Id.*)

21           Plaintiffs allege that the relevant product markets are Maps APIs, Routes APIs, and Places
22   APIs. (*Id.* ¶¶ 73-76.) Plaintiffs assert each market is "global." (*Id.*) Plaintiffs also allege that
23   other relevant markets include "the market for internet search" and "the market for cloud
24   computing." (*Id.* ¶ 77.) Plaintiffs allege Google engages in exclusionary tying to prohibit
25   customers from using any competing tools. This theory is based on Google's Terms of Service for
26   its digital-mapping API services, which state:

27           (e) No Use With Non-Google Maps. To avoid quality issues and/or
        brand confusion, Customer will not use the Google Maps Core
28           Services with or near a non-Google Map in a Customer Application.

> For example, Customer will not (i) display or use Places content on a non-Google map, (ii) display Street View imagery and non-Google maps on the same screen, or (iii) link a Google Map to a non-Google Maps content or a non-Google map.

(*Id.* ¶ 157.) Plaintiffs allege that the Terms of Services "prohibit developers from using *any* component of the Google Maps Core Service with mapping services provided by non-Google firms." (*Id.* ¶ 158.) Plaintiffs further allege that if a customer requests a specific digital-mapping API, Google will unilaterally add on additional digital-mapping APIs and charge the customer for those APIs. (*Id.* ¶ 164.)

The Court will address additional facts as necessary in the analysis.

## ANALYSIS

**A.  Legal Standard Applicable to a Motion to Dismiss.**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations are not required" to survive a motion to dismiss if the complaint contains sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). "Labels and conclusions[] and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 50 U.S. at 555.

When evaluating a Rule 12(b)(6) motion to dismiss, a district court accepts as true all material facts alleged in the complaint and draws all reasonable inferences in favor of the plaintiff. *Faulkner v. ADT Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). A district court should grant leave to amend unless the court determines the pleading could not "possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

**B.  The Court Grants Google's Motion to Dismiss.**

    **1.  Plaintiffs Fail to Allege a Tying Claim.**

Google argues Plaintiffs fail to allege a tying claim.[1] To state a valid tying claim, a

---

[1] Plaintiffs assert tying claims under sections 1 and 2 of the Sherman Act, and under section 3 of the Clayton Act. Google asserts, and Plaintiffs do not dispute, that if Plaintiffs fails to meet the requirements under section 1, Plaintiffs claims under the other statutes fail. *See Mozart Co v. Mercedes-Benz of N. Am., Inc.*, 833 F.2d 1342, 1352 (9th Cir. 1987) (noting that the elements for establishing a Sherman Act Section 1 claim and a Clayton Act Section 3 claim are virtually the same); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1182 n. 61 (1st Cir.

3

plaintiff must allege: "(1) that [the defendant] tied together the sale of two distinct products or services; (2) that [the defendant] possesses enough economic power in the tying product market to coerce its customers into purchasing the tied product; and (3) that the tying arrangement affects a not insubstantial volume of commerce in the tied product market." *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016) (citing *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 913 (9th Cir. 2007)). "A tie only exists where 'the defendant improperly imposes conditions that explicitly or practically require buyers to take the second product if they want the first one.'" *Id.* (quoting 10 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 1752b (3d ed. 2011)). Tying claims can be positive or negative, and "the common element in both situations is that a seller explicitly or implicitly imposes conditions linking the sale of a tying product with the sale of the tied product." *Id.*

The first element of tying claims requires "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product." *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5-6 (1958). "It is well settled that there can be no unlawful tying arrangement absent proof that there are, in fact, two separate products, the sale of one (i.e., the tying product) being conditioned upon the purchase of the other (i.e., the tied product)." *Krehl v. Baskin-Robbins Ice Cream Co.*, 664 F.2d 1348, 1352 (9th Cir. 1982). "[W]here the buyer is free to take either product by itself there is no tying problem…" *N. Pac. Ry. Co.*, 365 U.S. at 6 n.4.

Plaintiffs assert positive and negative tying claims, both of which rest on Google's Terms of Service. Plaintiffs assert that Google's Terms of Service create a tying arrangement because they prohibit customers from using any component of Google's digital-mapping API services with mapping services provided by non-Google firms. However, the Terms of Service do not condition the sale of one Google product on the purchase of second, separate Google product. Rather, the Terms of Service restrict a customers' use of certain of Google's content, *i.e.*, a customer cannot use a Google mapping service "with or near" a non-Google map. (Compl. ¶ 157.) The Terms of Service do not require that a customer purchase any Google mapping API service as a condition of

1994).

4

using another Google mapping API service. And Plaintiffs do not allege facts establishing that Google's mapping API services are otherwise unable to be purchased individually. Thus, Plaintiffs fail to allege a positive tying claim.

Plaintiffs also allege that the Google's practices constitute negative tying, which occurs "when the customer promises not to take the tied product from defendant's competitor." *Aerotec Int'l*, 836 F.3d at 1178 (citations omitted). Plaintiff again relies on the Terms of Service to support the alleged negative tying arrangement. The court in *Sambreel Holdings LLC v. Facebook, Inc.*, 906 F. Supp. 2d 1070 (S.D. Cal. 2012) addressed a similar situation. In that case, the plaintiff alleged that Facebook's gating campaign constituted unlawful negative tying because Facebook agreed to offer its website only to users who would agree not to use the plaintiff's services. The court found there was no viable tying claim where there were no allegations that Facebook precluded its users from maintaining Sambreel applications for use on other websites. *Id.* at 1080. In rejecting plaintiff's negative tying theory, the court explained "[Facebook] has a right to dictate the terms on which it will permit its users to take advantage of the Facebook social network" and to the extent Facebook's campaign collaterally prohibited such use, the users could choose to opt out and use other social networking sites. *Id.*

As in *Sambreel*, Google has the right to dictate the terms on which it will permit its customers to use and display its mapping services. The Terms of Service do not preclude Google customers from using a competitor's mapping services altogether, and if customers do not want restrictions on mapping API services, they can presumably use another mapping service. Thus, the Court finds that Google's restrictions on how customers of its mapping services may use or display Google's content does not create an unlawful tying arrangement.[2]

Google further argues that Plaintiffs' tying claim fails because they fail to allege coercion. To establish coercion, Plaintiffs must show that "the defendant went beyond persuasion and

---

[2] Plaintiffs also allege that Google unilaterally adds on its other API services and charges the customer for them. (Compl. ¶¶ 14, 164.) Because Plaintiffs fail to allege facts to support this conclusory allegation and because none of the named Plaintiffs allege that they experienced this "unilateral" add-on, this allegation is insufficient to support a tying claim. Plaintiffs also allege that Google engaged in tying through its search and Google Cloud Platform products. (*See id.* ¶ 266.) This conclusory allegation lacking factual support cannot support a tying claim.

5

coerced or forced its customer to buy the tied product in order to obtain the tying product." *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003). While an express refusal to sell the tying product without the tied product obviously constitutes coercion, *Datagate, Inc. v. Hewlett-Packard Co.*, 60 F.3d 1421, 1426 (9th Cir. 1995); *see also N. Pac. Ry. Co*, 356 U.S. at 7 (contractual obligation to purchase tied product is coercive), "tying conditions need not be spelled out in express contractual terms to fall within the Sherman Act's prohibitions," *Aerotec Int'l, Inc.*, 836 F.3d at 1179. "A showing of an onerous effect on an appreciable number of buyers coupled with a demonstration of sufficient economic power in the tying market is sufficient to demonstrate coercion." *Moore v. James H. Matthews & Co.*, 550 F.2d 1207, 1217 (9th Cir. 1977); *see also Cascade Health*, 515 F.3d at 914 (refusing to give a buyer a substantial discount on the tying product unless they buy the tied product can be coercive).

Here, Plaintiffs allege they could not "mix and combine" Google mapping API services with non-Google products and that they were thus forced to use other Google products and services. Plaintiffs' conclusory allegations are insufficient to establish coercion. Plaintiffs do not allege what Google products they were forced to purchase or what products they were unable to purchase because of Google's Terms of Service. For example, Plaintiffs allege Dream Big Media used Routes APIs and was forced to use other Google products or services instead of competitors' services, but they do not allege what other Google products Dream Big Media was forced to purchase or what competitor products they could not use. Plaintiffs' allegations regarding Getify and Sprinter Supplier are even more deficient. Plaintiffs have not alleged that either entity paid for any Google mapping API services at all; rather, the allegations of the complaint suggest that both developers applied free credits offered by Google to use its digital-mapping API services. Because they fail to allege they purchased any Google mapping services, Getify and Sprinter Supplier fail to allege coercion. *See Athos Overseas, Ltd. v. YouTube, Inc.*, No. 1:21-cv-21698, 2022 WL 910272, at *3 (S.D. Fla. Mar. 29, 2022) ("Acceptance of a free service does not constitute an impermissible tie-in."). The lack of sufficient allegations of coercion is fatal to Plaintiffs' tying claim. *Paladin Assocs., Inc.*, 328 F.3d at 1159 ("Essential to the second element of a tying claim is proof that the seller *coerced* a buyer to purchase the tied product."); *Eastman v.*

1  *Quest Diagnostics Inc.*, 724 F. App'x 556, 559-60 (9th Cir. 2018) (affirming dismissal of tying
2  claim where the plaintiff failed to adequately plead coercion).

### 2. Plaintiffs Fail to Adequately Allege Relevant Product Markets.

Google also argues that Plaintiffs fail to allege relevant product markets. To state a valid antitrust claim under the Sherman Act, a "plaintiff must allege both that a 'relevant market' exists and that the defendant has power within that market." *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1044 (9th Cir. 2008). There is no requirement that these elements of an antitrust claim be pled with specificity. *Id.* at 1045 (citing *Cost Mgmt. Servs. v. Washington Natural Gas Co.*, 99 F.3d 937, 950 (9th Cir. 1996)). An antitrust complaint therefore survives a Rule 12(b)(6) motion unless it is apparent from the face of the complaint that the alleged market suffers from a fatal legal defect. *Id.* Accordingly, because "the validity of the 'relevant market' is typically a factual element rather than a legal element, alleged markets may survive scrutiny under Rule 12(b)(6) subject to factual testing by summary judgment or trial." *Id.* (citing *High Technology Careers v. San Jose Mercury News*, 996 F.2d 987, 990 (9th Cir. 1993) (holding that the market definition depends on a "factual inquiry into the 'commercial realities' faced by consumers") (quotations omitted)). However, a complaint may be dismissed pursuant to Rule 12(b)(6) "if the complaint's 'relevant market' definition is facially unsustainable." *Id.* (citing *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436-37 (3d Cir. 1997)); *see Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1106 (N.D. Cal. 2022) ("Where a complaint fails to adequately allege a relevant market underlying its antitrust claims, those claims must be dismissed.").

Plaintiffs allege the relevant product markets are Maps APIs, Routes APIs, and Places APIs.[3] As an initial matter, Plaintiffs do not allege which product is the tying product and which is the tied product. In opposition, they claim that the "main tying product is Google Maps' Maps API, and the tied products are Google Maps' Routes APIs and Places APIs," (Opp. at 11), but this is not alleged in the complaint.

---

[3] Plaintiffs also allege that "[t]here are additional relevant markets salient for this case" including "the market for internet search and the market for cloud computing." (Compl. ¶ 77.) The complaint lacks allegations to support these proposed markets.

7

Further, Plaintiffs' product market allegations are facially unsustainable for other reasons. Plaintiffs have simply taken the labels that Google applies to its categories of digital mapping API services and alleged, in conclusory fashion, that those categories are the relevant product markets. (*See* Compl. ¶¶ 73-76.) However, defining a relevant market requires reference to the rule of reasonable interchangeability and cross-elasticity of demand. *See Queen City Pizza*, 124 F.3d at 436. The complaint does not sufficiently address these factors. Plaintiffs do not allege facts to support a finding that the markets for any of the services "encompass[] the product at issue as well as all economic substitutes for the product." *Newcal*, 513 F.3d at 1045. For example, Plaintiffs allege that the products are not economic substitutes for each other, but this does not establish there are no competing products for those distinct products. Indeed, the allegations in the complaint are insufficient even to separate the market for the purported tied products from the purported tying products. *See Rick-Mik Enterprises, Inc. v. Equilon Enterprises LLC*, 532 F.3d 963, 975 (9th Cir. 2008) (affirming dismissal of antitrust action in absence of allegations that demand for tied product was separate from tying product).

Plaintiffs' failure to allege facts showing the absence of economic substitutes for the products renders the alleged relevant markets "legally insufficient and a motion to dismiss may be granted." *Queen City Pizza*, 124 F.3d at 436; *see also Reilly*, 578 F. Supp. 3d at 1109 ("[A] plausible market requires alleged facts explaining why the products included in the market *are substitutes* for one another as well as alleged facts explaining why seemingly similar products excluded from the market *are not substitutes* for those in the market.").

### 3. Plaintiffs Fail to Adequately Allege Market Power.

Google also argues Plaintiffs fail to adequately allege market power. "Tying arrangements are forbidden on the theory that, if the seller has market power over the tying product, the seller can leverage this market power through tying arrangements to exclude other sellers of the tied product." *Rick-Mik*, 532 F.3d at 971 (internal citation and quotation marks omitted). Thus, "in all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product." *Id.*

The complaint alleges that Google has a 90% market share of the "business-to-business

market." (Compl. ¶ 130.) However, the "business-to-business market" is undefined, and Plaintiffs have not alleged any facts suggesting that it is the same as the alleged relevant product markets. Thus, Plaintiffs fail to plausibly allege market power in the relevant market. Furthermore, to the extent Plaintiffs argue that they have adequately alleged "direct demonstrations" of market power, those conclusory allegations are insufficient to establish market power, even assuming Plaintiffs had sufficiently defined the relevant market, which they have not.[4]

### 4. Plaintiffs' Other Claims Fail.

Plaintiffs also allege claims for bundling, exclusive dealing and monopoly leveraging. "Bundling is the practice of offering, for a single price, two or more goods or services that could be sold separately." *Cascade Health*, 515 F.3d at 894. Because Plaintiffs do not sufficiently allege that Google offers two or more services for a single price, the bundling claim fails.

"Exclusive dealing involves an agreement between a vendor and a buyer that prevents the buyer from purchasing a given good from any other vendor." *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 996 (9th Cir. 2010). Plaintiffs' exclusive dealing claim fails because, as discussed above, Plaintiffs fail to sufficiently allege that Google prevents its customers from purchasing competitors' API services.

Plaintiffs also assert a theory of monopoly leveraging. Monopoly leveraging is actionable if the plaintiff proves the elements of an attempted monopolization claim, which requires the plaintiff to prove the elements of either actual or attempted monopolization, including exclusionary conduct. *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 547 (9th Cir. 1991). Plaintiffs' monopoly leveraging claim rests on its deficient allegations of tying, exclusive dealing, and bundling, and thus, it too fails.

Finally, because Plaintiffs' UCL claim is governed by the same standard as Plaintiffs'

---

[4] The complaint also alleges that Google has a market share of 80% or more in the relevant product markets, relying on a U.S House Report that referred to the "navigation app market." (*See* Compl. ¶ 122.) In their opposition, Plaintiffs do not respond to Google's arguments challenging this allegation, and in failing to do so they concede these points. *See Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 & n.7 (N.D. Cal. 2013) (collecting cases holding that failure to respond to an argument in an opposition brief may constitute a concession of the argument).

antitrust claims, the Court dismisses it for the same reasons as the antitrust claim.[5]

For these reasons, the Court GRANTS Google's motion to dismiss and dismisses all of Plaintiffs' claims. However, because the Court cannot say amendment would be futile, it dismisses the complaint WITH LEAVE TO AMEND.

Google has requested the Court take judicial notice of certain documents in connection with the motion to dismiss. (*See* Dkt. No. 31.) The Court has not relied on these documents in deciding the instant motion and DENIES Google's request as MOOT.

**C.    The Court Denies Google's Motion to Strike.**

Google moves to strike Plaintiffs' class definition for two reasons: (1) the class definition includes persons who lack standing; and (2) the class definition is impermissibly "fail safe." The complaint defines the class as:

> From April 13, 2018, through the date that the alleged unlawful anticompetitive activity ceases, all direct purchasers, app or website developers, or other types of users of Maps APIs, Routes APIs, or Places APIS, or direct purchasers, app or website developers, or other types of users of Maps APIs, Routes APIs, or Places APIs who spent money or had their free-tier credits consumed more rapidly because of the anticompetitive allegations therein, or other types of users who continue to experience anticompetitive harm as a result of the allegations herein.

(*Id.* ¶ 46.)

A court may "strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained." *Tietsworth v. Sears,* 720 F.Supp.2d 1123, 1146 (N.D. Cal. 2010); *Sanders v. Apple Inc.,* 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009); *see* Fed. R. Civ. P. 23(d)(1)(D) (a court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."). However, motions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle for arguments pertaining to the class allegations. *See Thorpe v. Abbott Laboratories, Inc.,* 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008); *Kazemi v. Payless Shoesource Inc.,* No. C 09-5142 MHP, 2010 WL 963225, at *2 (N.D. Cal. Mar. 16, 2010); *see also In re Wal-Mart Stores,* 505 F.

---

[5] Plaintiffs represent that they do not intend to challenge the Waze acquisition, and thus, the Court will not address arguments related to the merits or timeliness of any such claim.

Supp. 2d at 614-15 ("Generally, courts review class allegations through a motion for class certification."). The decision whether to strike allegations is a matter within the Court's discretion. *Biggins v. Wells Fargo & Co.,* 266 F.R.D. 399, 406 (N.D. Cal. 2009).

The Court declines to strike Plaintiffs' class allegations at this time. While the Court has doubts about the propriety Plaintiffs' class definition, the Court finds Google's arguments better addressed at the class certification stage. *See, e.g.*, *Uschold v. Carriage Servs., Inc.*, No. 17-cv-04424-JSW, 2018 WL 8221266, at *4 (N.D. Cal. Feb. 21, 2018) (finding arguments challenging propriety of class allegations better reserved for class certification); *Azad v. Tokio Marine HCC-Med. Ins. Servs. LLC*, No. 17-cv-0618-PJH, 2017 WL 3007040, at *8 (N.D. Cal. July 14, 2017) ("Although the court has doubts as to whether this case can be maintained as a class action, the propriety of the class allegations are better addressed at the class certification stage. Motions to strike class allegations at the pleading stage are highly disfavored, and for good reason.").

Thus, the Court DENIES the motion to strike without prejudice.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Google's motion to dismiss WITH LEAVE TO AMEND. Plaintiffs shall file any amended complaint within thirty (30) days of the date of this Order. The Court DENIES WITHOUT PREJUDICE Google's motion to strike class allegations.

**IT IS SO ORDERED.**

Dated: November 1, 2022

_____
JEFFREY S. WHITE
United States District Judge