UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DREAM BIG MEDIA INC., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>ALPHABET INC., et al.,<br><br>    Defendants. | Case No. 22-cv-02314-RS<br><br>**ORDER FOR ADDITIONAL BRIEFING** |

    A motion brought by defendants Google LLC and Alphabet Inc. (collectively, "Google") to dismiss the First Amended Complaint was under submission when this matter was reassigned following recusal of the previously assigned presiding judge. Plaintiffs Dream Big Media, Getify Solutions, Inc., and Sprinter Supplier, LLC, are businesses that allegedly use Google mapping services, including application programming interfaces ("APIs"), to display or use maps or maps-related information on their websites or mobile applications. The crux of plaintiffs' complaint is that Google unlawfully ties its Maps, Routes, and Places API services together, by purportedly refusing to sell one API service unless the purchaser also agrees to buy the other Google mapping services or agrees to refrain from purchasing similar services from any alternative source.

    Plaintiffs allege this conduct, combined with Google's alleged market power, allows Google to charge higher prices for its mapping API services. Plaintiffs contend Google's actions constitute unlawful tying, bundling, exclusive dealing, and monopoly leveraging in violation of

the Sherman Act, the Clayton Act, and California's Unfair Competition Law.

The order dismissing the initial complaint, with leave to amend, relied in substantial part on *Sambreel Holdings LLC v. Facebook, Inc.*, 906 F. Supp. 2d 1070 (S.D. Cal. 2012). On further review, it is not clear that *Sambreel* is on point. The *Sambreel* plaintiff offered a product called "PageRage," which allowed users to add designs to be displayed when they visited Facebook's website. PageRage allegedly operated by "adding layers to the web browser residing on its users' computers." *Id.* at 1073.

As the *Sambreel* court explained, "A tying arrangement is 'an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier.' " *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 461–62 (1992) quoting *Northern Pacific R. Co. v. United States*, 356 U.S. 1 (1958); *Sambreel,* 906 F. Supp. 2d at 1080. The *Sambreel* plaintiff argued Facebook engaged in "negative" tying—demanding its users not use the PageRage product plaintiff offered. The two "markets" in issue were alleged to be "1) the market for social networking services in the United States, and 2) the market for applications and add-ons that enhance social networking services." *Id.*

The court concluded the alleged facts did not support a negative tying theory. Facebook was not competing, or trying to compete in the "market for applications and add-ons that enhance social networking services." Facebook very well may have had dominant power in the market for social networking services, but it was not attempting to leverage that power to obtain market share in the second alleged market for "add-ons." *See id.* ("The broader markets alleged, therefore, are not supported by the facts.")

Google relies on statements in *Sambreel* regarding Facebook's right to "determine" and to "dictate" the terms on which third-party application developers and users make use of its platform and website. *See id.* Google argues it similarly may prohibit customers from using any one of its mapping API services in conjunction with, or in proximity to, any non-Google mapping API service. *Sambreel's* observations about Facebook's right to control the use of its platform,

CASE NO. 22-cv-02314-RS

2

however, were made in a context where there were no allegations that the use restrictions had the intent or effect of increasing Facebook's share of a second, "tied" product or service market. Under Google's reading of *Sambreel*, it is difficult to imagine any circumstances under which a tying arrangement, positive or negative, could not be justified as merely an exercise of the defendant's "right" to "determine" or "dictate" the terms on which its own product or service is used.

Here, unlike *Sambreel*, Google is explicitly alleged to be attempting to compete in two- actually, three—purportedly separate markets, and it offers its own products in all three of those markets. Accordingly, it does not appear *Sambreel* provides a compelling precedent. That said, it does not follow that the complaint necessarily has alleged a viable negative tying theory. Among other things, plaintiffs appear to be pursuing a novel argument that the same product can be both the dominant tying product and the secondary tied product, depending on the specific transaction. Because the ordinary theory is that a defendant is attempting to use its existing power in one market to acquire power it does not yet possess in a second market, it is not immediately obvious that plaintiffs' approach is tenable. Plaintiffs have not pointed to any cases with similar allegations that two or more markets effectively can alternate as the tying and the tied.

The parties are requested to provide further briefing on such points as they deem appropriate in light of the observations of this order. Defendants may file a supplemental brief, not to exceed 15 pages, within two weeks of the date of this order. Plaintiffs may file a response, also not to exceed 15 pages, within one week thereafter. The matter will then again be taken under submission, unless subsequently ordered otherwise.

**IT IS SO ORDERED**.

Dated: October 12, 2023

_____
RICHARD SEEBORG
Chief United States District Judge

CASE NO. 22-cv-02314-RS

3