UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DREAM BIG MEDIA INC., et al.,

    Plaintiffs,

    v.

ALPHABET INC., et al.,

    Defendants.

Case No. 22-cv-02314-RS

**ORDER GRANTING MOTION TO DISMISS, WITH LEAVE TO AMEND**

## I. INTRODUCTION

Plaintiffs Dream Big Media, Getify Solutions, Inc., and Sprinter Supplier, LLC, allege they use mapping services provided by defendants Google, LLC and Alphabet, Inc. (collectively, "Google"), including application programming interfaces ("APIs"), to display or use maps or maps-related information on their websites or mobile applications. The crux of plaintiffs' complaint is Google unlawfully ties its "Maps," "Routes," and "Places" API services together, by purportedly refusing to sell one API service unless the purchaser also agrees to buy the other Google mapping services or agrees to refrain from purchasing similar services from any alternative source.

Plaintiffs allege this conduct, combined with Google's alleged market power, allows Google to charge higher prices for its mapping API services. Plaintiffs contend Google's actions constitute unlawful tying, bundling, exclusive dealing, and monopoly leveraging in violation of the Sherman Act, the Clayton Act, and California's Unfair Competition Law.

The order dismissing the initial complaint, with leave to amend, relied in substantial part on *Sambreel Holdings LLC v. Facebook, Inc.*, 906 F. Supp. 2d 1070 (S.D. Cal. 2012). Plaintiffs filed an amended complaint which they contend addresses all of the issues identified in the dismissal order. Google moved to dismiss the amended complaint, emphasizing an argument that plaintiffs had not pleaded facts sufficient to avoid the prior order's conclusion that, as suggested in *Sambreel*, "Google has the right to dictate the terms on which it will permit its customers to use and display its mapping services." ECF Dkt. No. 45.

Because it was not clear upon further consideration that *Sambreel* was on point, the parties were invited to provide further briefing. Google responded with arguments that *Sambreel* is at least instructive, but that in any event, the amended complaint fails to state a claim. Plaintiffs, not surprisingly, embraced the notion that *Sambreel* does not apply, and argue the motion to dismiss must therefore be denied. The United States, through the Antitrust Division of the Attorney General's office, then submitted a "Statement of Interest" pursuant to 28 U.S.C. § 517, declining to take a position on whether the motion to dismiss should be granted or not, but urging any dismissal should not be based on "dicta" in *Sambreel*, particularly to the extent that language suggests a defendant's rights to control use of its products override principles of antitrust law.

Google subsequently moved for leave to respond to the Attorney General's filing. Plaintiffs oppose that request, but have submitted their own proposed reply, should Google's request be granted. The requests for leave to submit additional briefs on both sides will be granted and the proposed briefs attached as exhibits to the parties' submissions are deemed filed. Upon consideration of all the briefing, the motion to dismiss will be granted, with leave to amend.

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544,

555, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679. Claims sounding in fraud must meet a somewhat higher specificity standard as provided by Rule 9 of the Federal Rules of Civil Procedure.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Id.* at 1242 (internal quotation marks and citation omitted). When evaluating such a motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017).

III. DISCUSSION

A. *Sambreel*

The *Sambreel* plaintiffs alleged defendant Facebook had violated antitrust laws by attempting to eliminate competition in the sale of online display advertising impressions. 906 F. Supp. 2d at 1073 (S.D. Cal. 2012). The plaintiffs offered a product called "PageRage," which allowed users to add designs to be displayed when they visited Facebook's website. PageRage allegedly operated by "adding layers to the web browser residing on its users' computers." *Id.*.

As the *Sambreel* court explained, "A tying arrangement is 'an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier.' " *Eastman Kodak*

*Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 461–62 (1992) quoting *Northern Pacific R. Co. v. United States*, 356 U.S. 1 (1958); *Sambreel,* 906 F. Supp. 2d at 1080. The *Sambreel* plaintiffs argued Facebook engaged in "negative" tying—demanding its users not use the PageRage product they offered. The two "markets" in issue were alleged to be "1) the market for social networking services in the United States, and 2) the market for applications and add-ons that enhance social networking services." *Id.*

The court concluded the alleged facts did not support a negative tying theory. Facebook was not competing, or trying to compete in the "market for applications and add-ons that enhance social networking services." Facebook very well may have had dominant power in the market for social networking services, but it was not attempting to leverage that power to obtain market share in the second alleged market for "add-ons." *See id.* ("The broader markets alleged, therefore, are not supported by the facts.")

Google relies on statements in *Sambreel* regarding Facebook's right to "determine" and to "dictate" the terms on which third-party application developers and users make use of its platform and website. *See id.* Google argues it similarly may prohibit customers from using any one of its mapping API services in conjunction with, or in proximity to, any non-Google mapping API service. *Sambreel's* observations about Facebook's right to control the use of its platform, however, were made in a context where there were no allegations that the use restrictions had the intent or effect of increasing Facebook's share of a second, "tied" product or service market. Under Google's reading of *Sambreel*, it is difficult to imagine any circumstances under which a tying arrangement, positive or negative, could not be justified as merely an exercise of the defendant's "right" to "determine" or "dictate" the terms on which its own product or service is used.

Google and plaintiffs both invoke a hypothetical described by the Supreme Court in *Northern Pacific Railway. Co. v. United States*, 356 U.S. 1 (1958) and repeated in *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2 (1984). "[I]f one of a dozen food stores in a community were to refuse to sell flour unless the buyer also took sugar it would hardly tend to

restrain competition if its competitors were ready and able to sell flour by itself." *Northern Pacific* 356 U.S. at 7, *Jefferson Parish* 466 U.S. at 12. Google's argument that its rights to limit how its API services are used notwithstanding antitrust principles would be akin to a dominate flour seller insisting its flour could not be used in baked goods with sugar purchased from others. If the seller was using its power in the market for the tying product (the flour) to restrain existing competition in the market for the tied product (the sugar), it likely would be no defense for the seller to argue it had an unqualified right to control how its flour was used.

Indeed, the flour seller might argue it had an interest in ensuring the reputation of its high quality flour not be sullied by a cake made with a competitor's bad sugar, much as Google apparently contends here its API services might suffer if combined with those of its competitors. While a party may have a broad range of rights to control use of its products and services through licensing agreements and terms of use provisions, however, particularly in the technology context, there is no basis to conclude such rights would trump antitrust law. To the extent any of the language in *Sambreel* or in the prior dismissal order in this case suggests otherwise, it does not provide a persuasive basis to grant the pending motion to dismiss.[1]

B.  "Two-way tying"

The order dismissing the initial complaint observed that plaintiffs had failed to "allege which product is the tying product and which is the tied product." Dkt. No. 45 at 7:22-23. Plaintiffs' amended complaint now alleges that, depending on the specific transaction between Google and its customers, *any* of the three services (Maps, Routes, or Places) can be the tying

---

[1] The government's statement further details why Google's interest in controlling how its API services are used is not dispositive. While Google's first supplemental brief continued to press the argument that *Sambreel* is dispositive, its response to the government instead stresses contentions that the complaint should be dismissed for other reasons. Although Google stops short of conceding the government's points, its response is telling. Plaintiffs also are correct that Google's second supplemental brief goes substantially beyond the scope of the government's statement. For that reason, plaintiffs' second supplemental filing has also been entertained.

service, with the remaining two then becoming the tied services. It is not obvious that such allegations present a cognizable tying claim.

Typically,"[a] tying arrangement is a device used by a seller with market power in one product market to extend its market power to a distinct product market." *Rick-Mik Enterprises, Inc. v. Equilon Enterprises LLC*, 532 F.3d 963, 971 (9th Cir. 2008) (quoting *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 912 (9th Cir. 2008). Because the notion is the defendant is leveraging economic power it possesses in one market to attempt to acquire power it presently lacks in another market, it is unclear how a single product or service could be *either* the tying or the tied product/service, depending merely on which one the customer bought first.

The parties have located only three cases addressing whether allegations of such a "two-way tie" are viable. In *Slattery v. Apple Computer, Inc*., 2005 WL 2204981 (N.D. Cal. Sept. 9, 2005) plaintiff brought one count alleging that Apple effectively required consumers who purchased digital music from the iTunes music store to buy iPods. A second count asserted that iPod purchasers were effectively coerced to buy music from the iTunes store. The court noted the "inconsistency" in alleging that something was both a tying product and a tied product, but decided to "allow the inconsistency to persist" at the pleading stage. 2005 WL 2204981, at *3. The court expressly cautioned that at some later point "an election might be necessary." *Id.*

*Tucker v. Apple Computer, Inc*., 493 F. Supp. 2d 1090 (N.D. Cal. 2006) was formally related to *Slattery*, and was decided by the same judge. On the two-way tying issue, the court expressly followed its earlier decision in *Slattery*. 493 F. Supp. 2d at 1097 n. 2. ("The same reasoning is applicable here.") Notably, the *Tucker* and *Slattery* plaintiffs ultimately abandoned any attempt to pursue a two-way tie theory. *See* Apple *iPod iTunes Antitrust Litig*., 2009 WL 10678931, at *4 (N.D. Cal. May 15, 2009) (discussing allegations of the then-operative complaint in the consolidated proceedings that tied product was the iPod and the tying product was music purchased from the iTune store.) The decision in *Slattery* and *Tucker* to permit an "inconsistent" two-way tying claim to proceed beyond the pleading stage is not a compelling basis to deny the motion to dismiss here.

The final case addressing the viability of a two-way tying theory was issued recently by the Western District of Wisconsin. *See Team Schierl Cos. v. Aspirus, Inc*., 2023 WL 6847433 (W.D. Wis. Oct. 17, 2023). The *Team Schierl* court observed there appeared to be no authority either permitting or rejecting two-way tying, but that novelty alone is not a basis to reject a legal theory. The court elected not to dismiss the claim, noting that defendant, who had not clearly addressed this issue until its reply brief, had failed to explain what element of a tying claim would not be satisfied by allegations of a two-way tie. 2023 WL 6847433 at *7.

*Team Schierl* asserted "the important question is whether the defendant has enough power in the tying market to restrain trade in the tied market," and it saw no reason a defendant could not have enough existing power in each of two markets *further* to restrain power in the other. *Id. Team Schierl*, of course, is not binding authority. Even to the extent it makes a persuasive point that a two-way tying theory might be viable in some instances, however, plaintiffs have not shown such circumstances exist here. Among other things, plaintiffs have expressly alleged that for *each* of the three Google API services involved, numerous competitors offer alternatives that are as good as or better in terms of performance and/or cost. Those allegations would appear to undermine any argument that each service could be both tying and tied.

Plaintiffs suggest that even if their two-way tying (three-way, actually) theory fails, they should be permitted to proceed on a claim that Maps is the tying product, with Routes and Places as tied products. Even assuming plaintiffs (or some of them) may be able to amend to assert a conventional negative tying claim of that nature, it is not what the existing complaint alleges.

Accordingly, the motion to dismiss will be granted, with leave to amend. Plaintiffs are not precluded from electing to proceed under a three-way tying theory, but if they do so they must be prepared to show why it is viable, beyond the fact that the cases discussed above did not dismiss claims at the pleading stage. Defendants, in turn, are not prohibited from invoking *Sambreel* in any future motion to dismiss, but are encouraged to focus on such other arguments as they may have.

## IV. CONCLUSION

Defendants' motion for leave to submit supplemental briefing (Dkt. No. 65) is granted, as is plaintiffs' corresponding request for consideration of its supplemental response (Dkt. No. 66). The proposed briefs attached thereto are deemed filed. The motion to dismiss is granted. Any amended complaint shall be filed within 30 days of the date of this order.

**IT IS SO ORDERED**.

Dated: November 30, 2023

RICHARD SEEBORG
Chief United States District Judge